STATE of Alaska, Petitioner,

v.

Richard R. JAMES, Respondent.

No. S–186.

Supreme Court of Alaska.

April 19, 1985.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, Dana Fabe, Public Defender, Anchorage, for respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The state seeks to reinstate a criminal conviction reversed by the court of appeals. The issue is whether a defendant is entitled to a unanimous jury verdict on a particular theory of the crime charged. In this instance the defendant was convicted of first degree assault.

## I. STATEMENT OF THE CASE

On January 10, 1982 at Fort Yukon, Alaska, Chester Druck was found lying unconscious with a knife wound in his stomach. Druck had recently left the home of Marilyn Horace and Richard James where the three had spent the previous evening together. He was taken to the Fort Yukon health clinic and then flown to Fairbanks where surgery was performed. Dr. Borden, the physician who examined him in the Fairbanks emergency room, described Druck's wound as having been inflicted by an 8-to-10-inch knife that pierced the abdomen and punctured the inferior vena cava near the spine. Dr. Borden stated that very few who suffer similar wounds survive.[1]

Richard James was charged with first degree assault after Druck accused him of the stabbing. According to Druck, at around 8:00 a.m. he was standing at a counter when he heard James approaching from a back room. Druck turned to face James, and James stabbed him in the abdomen with a knife. Druck testified that he "guessed" that James had stabbed him out of jealousy over Marilyn Horace, but Druck was not aware of anything that might have provoked James to jealousy.

At trial Druck identified James as his assailant. Horace testified that Druck was unhurt when he left the house. Although James did not testify, his counsel argued that either Druck had left the house unhurt or Horace had stabbed him. Defense counsel also argued that because James had been intoxicated, he had lacked the specific intent to cause serious physical injury, and that Druck's wound had not been "serious physical injury" because Druck had never been close to death.

The jury was instructed that it could find James guilty if it unanimously agreed that he had committed first degree assault as described in either AS 11.41.200(a)(1) or AS 11.41.200(a)(3).[2] The jury was not required

---

1. Dr. Borden testified:

    A large series of studies have shown that 36 percent of people injured in the inferior vena cava don't arrive alive at the hospital. Of those that do arrive alive and go to surgery for treatment, 57 percent of those will still die. So based on those figures it—it's a dangerous injury.

2. At the time of the offense AS 11.41.200 provided in part:

to reach unanimity as to one or the other theory, only as to the defendant's guilt of the offense. The jury returned a general verdict of guilty.

The court of appeals reversed James' conviction, concluding that the jury should have been required to reach unanimity as to either AS 11.41.200(a)(1) or (3). The court reasoned:

> It is possible that the jury unanimously agreed only that James stabbed Druck under circumstances manifesting an extreme indifference to human life and that he inflicted some physical injury. Yet these findings would suffice to constitute no more than an assault in the third degree, a class A misdemeanor.
>
> Given the significant differences between the essential elements of the two alternative statutory theories, we must conclude that the trial court's failure to require a separate verdict for each theory created an impermissible risk that the jury's verdict would not reflect unanimous agreement as to all material elements of either AS 11.41.200(a)(1) or AS 11.41.200(a)(3).

671 P.2d 885 at 891, 892 (1983) (footnotes omitted).

Since we reverse the appellate court on the issue of jury unanimity, we must consider a second contention James made in that court. In the appellate court James argued that the trial court had erred by excluding the testimony of a Fort Yukon police dispatcher who he claims would have given exculpatory testimony about a phone call she received from Marilyn Horace on January 10, 1982. The appellate court agreed with James, but did not determine whether the trial court's error was harmless. We remand to the appellate court for a determination whether the trial court's exclusion of the dispatcher's testimony was harmless error.

## II. DISCUSSION

The issue on appeal is whether the trial court erred in permitting a general verdict in this case when James had been charged with first degree assault under two theories. James contends that Alaska Rule of Criminal Procedure 31(a) requires unanimity on one or the other theory of assault under which he was charged. He argues that the federal constitution compels this interpretation of Rule 31(a). James relies primarily upon *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977).

The state contends that, historically, jurors in state courts have had to agree only on the defendant's guilt or innocence of the crime charged, not on a particular theory of that crime. The state relies on a long line of cases in asking us to adopt the rule accepted in most other states, i.e., that juries need not unanimously agree upon a particular statutory theory of the crime charged if there is sufficient evidence in the record to support either theory.

The landmark case on jury unanimity is *People v. Sullivan*, 173 N.Y. 122, 65 N.E. 989 (N.Y.1903). In *Sullivan* the defendant was charged with first degree murder under two theories of the crime. The case was submitted to the jury with an instruction permitting it to convict if it found that Sullivan had committed either premeditated murder or felony murder. Sullivan appealed his conviction, claiming that the instruction violated his right to a unanimous verdict. The court responded:

> There was but a single crime charged in the indictment against the defendant,— that of murder in the first degree; and the only issue to be determined by the jury was whether the defendant had been guilty of that crime. Under our statute (section 183, Pen.Code), so far as applicable to the case before us, proof either that the defendant killed the de-

---

(a) A person commits the crime of assault in the first degree if

(1) with intent to cause serious physical injury to another person, he causes physical injury to any person by means of a dangerous instrument;

(3) he intentionally performs an act that results in serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life.

ceased with a deliberate and premeditated design to effect his death, or while the defendant was engaged in the commission of a felony, or an attempt to commit a felony, though without any design to take life, established his guilt of the crime charged. "It is not necessary that a jury, in order to find a verdict, should concur·in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other." ... So, in this case, it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one. *It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.*

65 N.E. at 989–90 (citation omitted; emphasis added).

The *Sullivan* rule has been applied in first degree assault cases. In *Wells v. Commonwealth,* 561 S.W.2d 85 (Ky.1978), the jury was given an instruction similar to that given the James jury.[3] Wells asserted that the instruction, by creating the possibility of a verdict that was not unanimous, violated his due process right because proof beyond a reasonable doubt was not assured on each element of the offense charged. The *Wells* court stated:

The 6th and 14th amendments of the United States Constitution do not require a unanimous verdict in criminal cases tried in state courts, and *lack of unanimity among jurors does not violate the requirement of proof beyond a reasonable doubt.* Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 151 (1972).

. . . . .

We are convinced that the logic of *People v. Sullivan,* is sound and applicable here. [The statute at issue here] brings together two distinct culpable mental states (intent and wantonness manifesting extreme indifference to the value of human life) and punishes them equally under specified circumstances.

*Id.* at 86–87 (emphasis added).

The *Sullivan* rationale has also been adopted in most other jurisdictions that have considered the issue. *See e.g., State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976); *State v. Encinas,* 132 Ariz. 493, 647 P.2d 624 (1982); *State v. Duncan,* 312 N.W.2d 519, 524 (Iowa 1981); *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979), *cert. denied,* 445 U.S. 981, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *State v. Wilson,* 220 Kan. 341, 552 P.2d 931 (1976); *People v. Fullwood,* 51 Mich.App. 476, 215 N.W.2d 594 (1974); *State v. Hazelett,* 8 Or.App. 44, 492 P.2d 501 (1972); *People v. Nye,* 63 Cal.2d 166, 45 Cal.Rptr. 328, 403 P.2d 736 (Cal.1965); *State v. Flathers,* 57 S.D. 320, 232 N.W. 51 (1930).

In *State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328, the defendant was convicted of grand larceny for violating a welfare fraud

---

**3.** The jury was instructed:

You will find the defendant, William Wells, guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

(a) That in this county on or about May 21, 1976, and before the finding of this indictment herein, he inflicted serious physical injury upon Rodney Cline by shooting him with a pistol, a deadly weapon.

(b) That the injury was a serious physical injury:

(c) That in so doing, the defendant: (1) Intended to cause serious physical injury to Rodney Cline and that said pistol was a deadly weapon. Or, (2) Was wantonly engaging in conduct which created a grave risk of death to another and that he thereby caused Rodney Cline's injury under circumstances manifesting extreme indifference to the value of human life; And,

(d) That in so doing, the defendant was not justified.

*Id.* at 87.

statute.[4] The trial court instructed the jury that it could find the defendant guilty of grand larceny if it found that she:

> either made a false statement or representation of material facts, conditions or circumstances affecting her eligibility of [sic] need for assistance, or that the defendant failed to reveal any material facts, conditions or circumstances affecting her eligibility of [sic] need for assistance, or that the defendant failed to promptly notify the county office in writing as required by law of any change in status with respect to resources or income or money contributions from whatever source derived ...

553 P.2d at 1329. After concluding that the statutory provision describes a single offense, the Washington Supreme Court relied on *Sullivan* to hold that:

> it is unnecessary to a guilty verdict that there be more than unanimity concerning guilt as to the single crime charged, i.e., grand larceny, regardless of unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged.

553 P.2d at 1330.

In determining whether to adopt the *Sullivan* rule for Alaska, we must consider the consequences of its rejection. There are differences in conduct, intent or circumstances between the subsections of almost every criminal statute in our code. Rejection of the *Sullivan* rule would therefore result in juror disagreement over semantics in many cases in which they unanimously agree that the defendant committed the wrongful deed. Our experience is that jurors have a keen sense of justice that is well served by the *Sullivan* rule. By requiring semantic uniformity we encourage overcomplicated instructions and hung juries in cases in which the jurors actually agree upon the defendant's guilt.

■ We adopt the *Sullivan* rule for cases in which a jury is instructed disjunctively on alternative methods by which a defendant may commit a single offense. Alaska Rule of Criminal Procedure 31(a) should be interpreted to require only that a jury be unanimous in its conclusion that the defendant committed a single offense described in the statute.

■ Our next task is to determine whether AS 11.41.200 describes a single offense. In *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir.1976), the court set out four factors to consider in deciding whether a statute describes a single offense or multiple offenses: (1) the language of the statute itself; (2) the legislative history; (3) the nature of the proscribed conduct (whether the statute describes distinctly different kinds of conduct); and (4) the appropriateness of multiple punishment for the conduct charged in the indictment. 546 F.2d at 836, 837; *see also State v. Arndt*, 553 P.2d at 1331.

■ Applying *UCO*, we find that the legislature has described a single offense in AS 11.41.200. Although the statutory language is neutral, the history of AS 11.41.200 indicates a legislative intent to define a single crime.[5] Also, the subsections of AS

---

**4.** RCW 74.08.331 provides in part:

> Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or

other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

**5.** The commentary to the Alaska Revised Code 1978 Senate Journal Supplement No. 47 describes AS 11.41.200 as a single crime:

> Assault in the first degree, a class A felony, is the most serious form of assault in the Code.

11.41.200 proscribe similar types of conduct. Each subsection describes a morally culpable mental state and an act causing physical injury to another. When a defendant commits first degree assault by any of the three methods, the victim is fortunate to survive. Moreover, we find no evidence that the legislature intended by AS 11.41.200 to expose defendants to multiple punishments. We may therefore assume that a single punishment was envisioned for violation of the statute.[6]

The sole case which an appellate court reversed a conviction on the ground that the sixth amendment requires unanimous agreement upon a single alternative definition of a crime is *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977). In *Gipson* the defendant was charged with violating a statute listing six different criminal acts.[7] It was alleged that Gipson had violated the statute by committing various criminal acts in several incidents. The jury instruction permitted conviction without requiring unanimity about which act Gipson had committed and which incident was involved. The appellate court reversed the conviction and held that the jury should have been required to agree upon "just what the defendant did." 553 F.2d at 457. *Gipson* held that the jury must unanimously agree on the *actus reus* element of the offense because the prohibited acts were "conceptually distinct." *Id.* at 458.

> The crime may be committed by any of three methods.

(Emphasis added).

**6.** Citing the presumption against construing penal statutes to permit multiple punishment (*Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the *UCO* court held that, absent contrary evidence, it could assume that Congress had envisioned a single punishment for violation of the statute at issue. 546 F.2d at 838.

**7.** 18 U.S.C. § 2313, the statute violated by the defendant in *Gipson*, states:

> Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft moving as, or which is part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

In the instant case there is only one criminal act alleged and only one incident involved. All twelve jurors agreed that James had committed the act. Thus the *Gipson* court's holding that the jury must unanimously agree on just what the defendant did does not conflict with the instruction given in this case.[8]

The significance of this distinction has been recognized by other courts.[9] In *Burrell v. United States*, 455 A.2d 1373 (D.C. App.1983), the court acknowledged its prior holding that "when one jury instruction encompasses two separate incidents, the trial judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which incident or incidents they find the defendant guilty." 455 A.2d at 1379 citing *Hawkins v. United States*, 434 A.2d 446, 449 (D.C.1981). Nevertheless, it concluded that:

> The facts of the instant case are substantially different from those found in our earlier cases involving the unanimity requirement. *Here, the government and the defense offered different versions or theories of a single incident—the stabbing death of the decedent. Appellant was charged with one crime—second-degree murder while armed—as a result of that same incident. Because there was but one offense based on a single incident and the jury had reached a*

**8.** The distinction between *Gipson* and the instant case was also made in a law review note to *United States v. Gipson:*

> The state rule allowing patchwork verdicts may have been satisfactory for dealing with common law crimes, which typically prohibited only one "act," but it is not clear that it is still appropriate for modern statutes that criminalize several distinct "acts" under a single heading.

Note, 91 Harvard L.Rev. 499 n. 8 (1978).

**9.** The case before us is comparable to that presented in various decisions from Circuit Courts of Appeal that have found *Gipson* easy to distinguish. *E.g., U.S. v. Barton*, 731 F.2d 669 (10th Cir.1984); *Lampkins v. Gagnon*, 710 F.2d 374 (7th Cir.1983); *U.S. v. DiLapi*, 651 F.2d 140 (2nd Cir.1981).

*unanimous verdict, we can presume that the unanimity requirement was satisfied;* there was no convincing evidence to the contrary.

455 A.2d at 1379, 1380 (emphasis added).

■ We believe that the purpose of the unanimous jury requirement is well served by our insistence that jurors agree upon just what the defendant did; they must all agree that the defendant committed a single offense.

■ Alaska's codification of the common law crime of first-degree assault prohibits only one act: a physical assault. Unlike *Gipson,* the case before us does not present a situation in which jurors might have split over whether the defendant committed a single criminal act; in such a case it might well be necessary to require unanimity upon the *actus reus* element. However, where the alleged criminal deed is restricted to a single incident, any potential difference in the jurors' findings of intent versus wilful disregard is not significant when jurors unanimously agree upon the defendant's guilt of the crime.

■ If we were to require unanimity about more than just what a defendant did, we would fail to give sufficient deference to the roles of the legislature and the jury.[10] We do not believe the legislature intended to force prosecutors in charging crimes, or judges in instructing juries, to select either one or another of the alternative subsections in most criminal statutes. If it had so intended, the legislature would not have included the various subsections in unitary statutory offenses. To the contrary, the legislature evidently contemplated disjunctive charging and wanted to make it possible to convict despite a potential lack of analytical unanimity.[11]

In *Gray v. State,* 463 P.2d 897 (Alaska 1970), we expressly approved a general ver-

dict on a disjunctive first degree murder charge. We noted preliminarily that the two theories of first degree murder (premeditated and felony) did not require the showing of inconsistent facts and that sufficient evidence had been presented to justify submission to the jury on both theories. 463 P.2d at 910. We then stated:

We believe that only one conviction of murder should be allowed for the killing of one man. *Although there are several ways of committing first degree murder, it is still only one crime; and only one sentence can be imposed. We believe it is sound to allow multiple theories to be presented to the jury and not to force the jury to choose between them.*

463 P.2d at 911. In approving the *Sullivan* rule, we reaffirm our decision in *Gray v. State.*

■ In James' case, there was substantial evidence presented to support the verdict under either theory as to his neutral state. Druck was stabbed with an 8-to-10 inch knife that penetrated his abdominal wall and punctured the inferior vena cava, and he testified that it was James who stabbed him for no apparent reason. The jury was entitled to rely on this evidence.

■ Because we find that the jury instructions were proper, we reverse the decision of the court of appeals. In addition, we remand the case to that court to determine whether the trial court erred in not permitting the Fort Yukon police dispatcher to testify about the telephone call she received from Horace's residence on January 10, 1982.

REVERSED and REMANDED.

RABINOWITZ, Justice, dissenting.

For essentially the reasons advanced by Chief Judge Bryner in *James v. State,* 671

---

10. Ultimately a line must be drawn between facts that the jury must unanimously agree upon and those that it may differ over. Historically, where a single offense has been charged, that line had been drawn at the fact of guilt or innocence. We do not believe that the traditional practice violates the federal constitution.

11. At the time AS 11.41.200 was enacted in *1978* the practice of disjunctive charging was common in most jurisdictions, including Alaska.

P.2d 885 (Alaska App.1983), I dissent from the court's opinion.

In my view, the superior court's jury instructions may have created a situation where the jury unanimously agreed only upon the elements constituting third degree assault, and yet convicted James of the crime of assault in the first degree. As the Court of Appeals noted, the superior court instructed the jury as to the alternative definitions of first-degree assault contained in AS 11.41.200(a)(1) and AS 11.41.-200(a)(3), permitting the jury to return a general verdict convicting James of assault "without necessarily agreeing on the definition under which his guilt was determined." After analyzing the alternative definitions which were given the jury, the Court of Appeals concluded that "these two provisions require proof of essential elements that are substantially different." [1]

Concerning the significance of the foregoing, the Court of Appeals, in my view, correctly reached the following conclusion:

> The differences in intent in the alternative statutory provisions might not, standing alone, be significant, since a finding of specific intent to inflict serious injury would encompass extreme indifference to the value of human life. *See* AS 11.81.610(c). Similarly, the difference in the extent of injury required would not, by itself, be significant, since a finding of serious physical injury would necessarily include a finding of physical injury. *See, e.g., Christie v. State,* 580 P.2d 310, 322 (Alaska 1978). However, taken together these differences are significant. It is possible that the jury unanimously agreed only that James stabbed Druck under circumstances manifesting an extreme indifference to human life and that he inflicted some physical injury. Yet these findings would suffice to constitute no more than an assault in the third degree, a class A misdemeanor.

> Given the significant differences between the essential elements of the two alternative statutory theories, we must conclude that the trial court's failure to require a separate verdict for each theory created an impermissible risk that the jury's verdict would not reflect unanimous agreement as to all material elements of either AS 11.41.200(a)(1) or AS 11.41.200(a)(3). (Footnote omitted.) [2]

Since I do not view the superior court's questioned instructions as harmless error I would affirm the Court of Appeals' reversal in this case.[3]

---

**1.** *James v. State,* 671 P.2d 885, 891 (Alaska App. 1983).

**2.** *Id.* at 892.

**3.** Regarding the harmless error issue, I do not believe the doctor's testimony that over 70% of those who suffer similar injuries die is conclusive on the question of whether Druck himself suffered a serious physical injury. Perhaps many of the 30% who did not die never experienced any serious difficulties at all. On that evidence alone, I doubt the jury could even conclude beyond a reasonable doubt that serious injury had occurred. And here, the question is, or should be, whether the jury could not possibly have reached any other conclusion. Even if the state's evidence was sufficient to support such a finding, the jury did not have to accept it.