Joe Q. WARD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1519.

Court of Appeals of Alaska.

March 6, 1987.

Thomas A. Flippen, II, Boyko, Davis & Dennis, Anchorage, for appellant.

Adrienne P. Fedor, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Joe Q. Ward was observed driving erratically on November 22, 1985, and was stopped by Alaska State Trooper Barry Croy. After performing field sobriety tests, Ward was arrested for driving while intoxicated (DWI) and transported to the police station for an Intoximeter test. The result was .225 grams of alcohol per 210 liters of breath, more than twice the legal limit of .10.

Ward requested to be driven to Alaska Native Hospital (ANS) for an independent blood test. While Trooper Croy and Ward were en route a supervisor told Croy, over the radio, not to take Ward to ANS because the state had no contract with them for blood extraction. Trooper Croy then asked Ward whether he would prefer being tested at Providence Hospital or Humana Hospital. Ward refused to go to either hospital.

After the trial, the jury was instructed, over defense objection, that individual jurors could find Ward guilty of DWI under either of the alternative theories in AS 28.35.030(a) in order to convict him. The jury found Ward guilty of DWI.

The main issue is whether the trial court erred in refusing to suppress the Intoximeter result because the trooper "actively prevented" Ward from obtaining an independent blood test from a facility of his own choosing, pursuant to AS 28.35.033(e):

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable so to do, is likewise admissible in evidence.

We discussed this provision in *Anchorage v. Serrano*, 649 P.2d 256 (Alaska App. 1982). In *Serrano*, we decided that due process requires the state "to take reasonable steps to attempt to preserve breath samples for defendants for their independent analysis or to provide some other alternative check of the breathalyzer results." *Id.* at 259. We specifically endorsed a blood test as an acceptable alternative check of the breathalyzer results. We stressed that the constitutional requirement covered breath sample preservation *or* reasonable efforts to assist in obtaining a blood test, but not both. *Serrano*, 649 P.2d at 258 n. 5. Since a sample of Ward's breath was preserved in this case, we do not view Ward's assignment of error regarding the blood test as one of constitutional significance, but one of statutory interpretation.

We also conclude, based on *Serrano*, that the police fully satisfied their obligation to preserve evidence by preserving Ward's breath sample. Contrary to Ward's assertions, AS 28.35.033 did not impose upon the police a duty to transport him to a blood testing facility or to offer him a

blood test free of charge. We will nevertheless address Ward's allegation that the state "actively prevented" him from obtaining a blood test under AS 28.35.033(e).

In *Serrano*, we discussed the requirements for "effective compliance" with AS 28.35.033(e):

[W]e believe that the prosecution would, at a minimum, have to show the following: (1) that the officer who administered the breathalyzer test clearly and expressly informed the defendant of his right to secure an independent test under AS 28.-35.033(e); (2) that if the defendant requested an independent test, the officer who performed the breathalyzer test or other officers having actual physical custody of the defendant made reasonable and good-faith efforts to assist the defendant in obtaining access to a person qualified to perform an independent examination; and (3) that persons qualified to conduct independent tests or to preserve blood or breath samples for the purpose of conducting independent tests were in fact available in the area where the breathalyzer test was administered.

*Serrano*, 649 P.2d at 258 n. 5. We believe that the record in the instant case shows clear compliance with the above requirements. Ward knew that he had a right to an independent test. By offering to transport Ward to either of two area hospitals, Trooper Croy made a reasonable and good-faith effort to assist Ward in obtaining a blood test.

Ward argues strenuously, however, that the statute permits him access to medical personnel "of his own choosing," implying that the police had an absolute obligation to transport him to a doctor or hospital *of his own choice*. We refuse to read such a requirement into the statute. Ward was afforded an opportunity to obtain a blood test at either of two qualified medical facilities. Ward does not contend that the police acted capriciously or in bad faith in refusing to drive him to ANS. There is no evidence in the record to support Ward's belief that the medical personnel at either Providence or Humana "could not be trust-

ed." Ward does not suggest that he was held in detention for a time period so lengthy that he could not have obtained transportation to ANS himself, following booking procedures, and obtained an accurate blood test.

The primary concern of AS 28.35.033 is to provide a defendant with an independent basis for challenging a breathalyzer reading. The police offered to assist Ward in securing an independent test. Ward rejected the offer of assistance because it did not suit him; the police had no obligation to provide the precise assistance Ward desired. There is nothing in the record to establish that the police "actively interfered" with Ward's right to obtain an independent test on his own initiative. Under these circumstances, we find no error in failing to suppress the Intoximeter reading.

The second issue is whether the court correctly instructed the jury that it could find Ward guilty if he had driven "either while under the influence of intoxicating liquor or with a level of .10 grams of alcohol per 210 liters of breath...." The court also instructed the jury that they "need not be unanimous on which of the two theories had been proven." An analogous instruction was upheld in *State v. James*, 698 P.2d 1161 (Alaska 1985). In that case, the supreme court interpreted Alaska Criminal Rule 31(a) "to require only that a jury be unanimous in its conclusion that the defendant committed a single offense described in the statute." *Id.* at 1165. Although *James* dealt with alternative theories of first-degree assault, we see no reason to limit its holding to assault cases. We can find no basis for distinguishing *James* from the present case.

Ward also disputes several evidentiary rulings which he claims deprived him of a fair trial, either alone or in combination. First, he cites the court's refusal to admit testimony showing that ANS had the personnel and facilities to test blood alcohol content. Ward did present to the jury the fact that he was refused a ride to ANS, the facility of his choosing. We conclude that the excluded testimony was irrelevant to

any issue before the jury, and was properly excluded.

 Ward also challenges the admission, over his objection, of Trooper Croy's testimony that Ward told him, "I don't want to go to a white man's hospital." Ward made this statement as an explanation for his refusal to go to either Providence or Humana hospital. The fact of Ward's refusal to go to either hospital was certainly admissible to place the trooper's refusal to take Ward to ANS in context. However, we believe that, on balance, Ward's "explanation" was not admissible. There is no question that admission of this statement was more prejudicial than probative. A.R.E. 403. The remark, with its obvious racial implications, added nothing to the fact of Ward's refusal and could only have served to alienate a jury. Despite the state's assertions to the contrary, the statement was not necessary to its case. However, we must analyze this error under the harmless error standard articulated in *Love v. State*, 457 P.2d 622 (Alaska 1969). The question under *Love*, is whether the improperly admitted evidence appreciably affected the jury's verdict. *Id.* at 632. We conclude that, in Ward's case, it is unlikely that the improperly admitted evidence affected the guilty verdict. Ward's breathalyzer reading was extremely high and he admitted drinking beer that day. Moreover, his driving had been observed to be erratic and potentially dangerous.

Ward next claims that the trial court erred in refusing to allow defense counsel to explore parallels between this case and a previous DWI case in which Croy was the arresting trooper. *See Lawrence v. State*, 715 P.2d 1213 (Alaska App. 1986). Because the proffered evidence would have been both irrelevant and prejudicial, we find this contention to be without merit.

Ward also challenges the court's refusal to strike a statement made by the prosecutor in closing argument. The prosecutor indicated that Trooper Croy had no motive to lie when to do so could cost Croy his job or subject him to charges. Defense counsel objected and requested that the jury be admonished to disregard the statement. The request was denied. A motion for mistrial on the same basis was also denied. We believe that the prosecutor's argument was on the borderline between permissible common-sense inferences, and inadmissible commentary bolstering a witness' credibility. We believe that the court should have admonished the jury to disregard the prosecutor's statement. However, we decline to find reversible error. We cannot conclude that permitting the argument appreciably affected Ward's conviction. *Love v. State*, 457 P.2d 622 (Alaska 1969). As we noted above, the evidence of Ward's guilt was substantial.

Finally, Ward cites as error the court's refusal to allow the jury to see a copy of the police report during deliberations. The police report was not admitted into evidence at the trial. Defense counsel cannot now complain that the jury was improperly prevented from reviewing the report.

The judgment of the district court is AFFIRMED.