**Joe Q. WARD, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–2078.**

Supreme Court of Alaska.

June 17, 1988.

Thomas A. Flippen, II, Boyko, Davis, & Dennis, Anchorage, for petitioner.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

This petition for hearing presents two questions. First, did the district court err in denying Ward's motion to suppress the results of his Intoximeter test when State Troopers refused his request to have an independent blood test performed at Alaska Native Medical Center, as provided in AS 28.35.033(e)? Second, was Ward denied his right to a unanimous jury verdict when the district court instructed the jury that it could return a guilty verdict without agreeing upon whether his guilt was established by proof that he drove while under the influence of intoxicating liquor or by proof that his breath alcohol level exceeded .10 grams of alcohol per 210 liters of breath?

## I. FACTUAL CONTEXT.

Joe Q. Ward was arrested for driving under the influence of alcohol. He was taken to State Trooper headquarters where he performed certain field sobriety tests and submitted to an Intoximeter test. The Intoximeter showed that Ward had .225 grams of alcohol per 210 liters of breath.

Before Ward took the breath test, he was belching. The arresting trooper warned Ward to stop belching and advised him that if he continued to belch, a charge of refusing the breath test would be filed against him. The trooper then waited twenty minutes—the standard observation period [1] before administering the Intoximeter test. Ward contends that he continued

to belch during that period, but that he was able to mask his belching.[2] At the conclusion of the observation period, Ward provided a breath sample for analysis. The sample was captured in a magnesium perchlorate tube and preserved, as required by *Municipality of Anchorage v. Serrano*, 649 P.2d 256 (Alaska App. 1982).

Ward, who claims he was surprised by the Intoximeter reading of .225, was then advised of his right to obtain an independent blood test by a person or entity of his choosing. Ward accepted the opportunity, and requested to be taken to Alaska Native Medical Center (ANMC). En route to ANMC, the trooper was instructed by radio not to honor Ward's request because the state did not have a contract for blood testing with ANMC. Ward declined an offer of transportation to Providence or Humana Hospitals, with which the state had contracts. No independent test was conducted to determine the alcohol content of Ward's blood.

## II. PROCEDURAL CONTEXT.

Ward made a pretrial motion to suppress the results of the Intoximeter based on the Troopers' violation of AS 28.35.033(e). In support of the motion Ward submitted an affidavit from the Director of Ambulatory Care at ANMC, who stated that qualified personnel had been available at the time of Ward's request to extract a blood sample and to test it for alcohol content. The Director further advised that the test results would have been available in approximately one hour and that ANMC would have provided service to Ward.[3]

Ward argued in his motion to suppress the results of the Intoximeter test that such an independent blood test was of critical importance because the breath sample that had been analyzed, and then preserved

1. *See* 7 AAC 30.020 (Eff. 2/20/70; am. 7/27/85).

2. Ward argues that he suffers from a gastric condition that causes him to belch frequently, and that he has learned to mask his belching to save himself from social embarrassment. The arresting trooper testified that Ward did not belch during the observation period.

3. The Director stated that ANMC "does not refuse treatment ... to anyone if they say they are Alaska Natives.... If a person has a record of treatment at ANMC, this indicates a prior determination that he/she is a Native Alaskan/American." Ward had a long history of treatment at ANMC.

in the perchlorate tube, had been contaminated by his belching. Ward further contended that only by testing his blood alcohol content could he show that the Intoximeter analysis of his breath alcohol level was artificially high due to belching. The Troopers' prevention of his attempt to obtain a blood test at ANMC, argued Ward, deprived him of his due process right "to conduct an independent test to assure the accuracy of the breathalyzer results." *Serrano*, 649 P.2d at 258, n. 5.

The district court, assuming as true the facts set forth by Ward, denied the motion to suppress. The district court held that "[t]he saving of the defendant's breath by means of a perchloride [sic] tube is sufficient to satisfy the dictates of *Cisneros v. State*, 649 P.2d 256 (Alaska App. 1982) [companion case to *Serrano*]," and "thus there is no constitutional violation." The district court also found that "[t]he facts do demonstrate a violation of AS 28.35.033(4)(e). [sic] However, the remedy for such a violation is not suppression of the evidence."[4]

The case was tried before Judge Martha Beckwith. The district court denied Ward's request for a jury instruction on unanimity that would have required the jury unanimously to find him guilty of driving under the influence of alcohol in violation of AS 28.35.030(a)(1) *or* of driving with a blood alcohol level of .10 or more. Rather, the district court instructed the jury: "You must be unanimous in your verdict. You need not be unanimous, however, on which of the two theories the state has proven." Ward was convicted by the jury in a general verdict that found him "guilty as charged in the complaint."

Ward appealed to the court of appeals, which affirmed his conviction. *Ward v. State*, 733 P.2d 625 (Alaska App.1987). The court of appeals held that *Serrano* required "breath sample preservation *or* reasonable efforts to assist in obtaining a blood test, but not both." *Id.* at 626 (em-

phasis in original). "Ward's assignment of error regarding the blood test" was thus not a question "of constitutional significance, but one of statutory interpretation." *Id.* The court "refuse[d] to read ... a requirement into the statute" that the Troopers had an obligation to transport Ward "to a doctor or hospital *of his own choice.*" *Id.* at 627 (emphasis in original).

The court of appeals also ruled against Ward on the issue of jury unanimity. Relying on *State v. James*, 698 P.2d 1161, 1165 (Alaska 1985), in which this court held that the jury need "only ... be unanimous in its conclusion that the defendant committed a single offense in the [first-degree assault] statute," the court of appeals found no error in Judge Beckwith's instruction. *Ward*, 733 P.2d at 627. We granted Ward's petition from both of these affirmances by the court of appeals.

III. DID THE TRIAL COURT ERR IN DENYING WARD'S MOTION TO SUPPRESS THE RESULTS OF HIS INTOXIMETER TEST?

A. *Ward's Right to a Blood Test by a Facility of His Own Choice Was Denied.*

Alaska Statute 28.35.033(e) states:

The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer. The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to do so, is likewise admissible in evidence.[5]

Therefore, Ward had the right to have a blood test performed by "a ... qualified person of [his] own choosing," i.e., by per-

---

4. Ward filed a Motion to Rescind or Otherwise Invalidate Order Denying Defendant's Motion to Suppress, which the district court treated as a peremptory challenge of Judge White. The matter was reassigned to Judge Stewart. Judge Stewart denied Ward's motion to suppress. He

later denied Ward's Motion to Reconsider as well.

5. In interpreting the meaning of a statute, we look first to the language thereof. *University of*

sonnel at ANMC. The only reason given by the Troopers for not taking Ward to ANMC was that the state did not have a contract with ANMC. The state argues on appeal that "the statute does not require the police to provide the driver with free transportation to the chosen facility, nor does it require the police to pay for the second test." *See also Ward,* 733 P.2d at 627. However, these concerns are not at issue in the instant case. Here the Troopers voluntarily offered to take Ward to the facility of his choice, began to drive him there, and then, en route, decided not to take him to ANMC because of the lack of a contract with the state. Furthermore, ANMC's Director of Ambulatory Care stated in his affidavit that the blood test would have been performed at Ward's request, and he did not dispute Ward's claim that it would have been performed at no cost to Ward or the state.

The statute says nothing about contractual relationships between the state and qualified facilities for blood tests. It states only that the arrestee has the right to an additional test by a person of his or her own choosing. The Troopers denied Ward the right to obtain such a test after they had agreed to transport him to ANMC. This was a violation of Ward's right under AS 28.35.033(e).

B. *Because Ward Was Denied the Opportunity to Obtain a Blood Test by the Facility of His Choice the Results of His Breathalyzer Test Must be Excluded.*

■ The applicable statute provides a remedy for a defendant's inability to obtain an independent blood test:

*Alaska v. Geistauts,* 666 P.2d 424, 428 n. 5 (Alaska 1983). In that case we

recognize[d] that there is no longer a plain meaning rule as such in Alaska law. Where a statute's meaning appears clear and unambiguous, however, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent. *Municipality of Anchorage v. Sisters of Providence in Washington, Inc.,* 628 P.2d 22, 27 n. 6 (Alaska 1981); *State v. City of Haines,* 627 P.2d 1047, 1049 (Alaska 1981).

See also *Copelin v. State,* 659 P.2d 1206, 1211 (Alaska 1983), where we held that a person arrested for driving while under the influence

The failure or inability to obtain an additional test by a person does not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer; the fact that the person under arrest sought to obtain such an additional test, and failed or was unable to do so, is likewise admissible in evidence.

AS 28.35.033(e).

The state argues that the statutory remedy is the exclusive one available to Ward. In a case such as the instant one, however, such a remedy is inadequate to protect the interests of the defendant. Thus, we must consider, as we did previously in *Copelin v. State,* 659 P.2d 1206, 1214 (Alaska 1983), whether "invocation of the exclusionary rule is appropriate ... even though there is no provision for doing so in the statute...." We conclude that where, as here, the police deprive a defendant of his or her statutory right to an independent blood test, the results of the defendant's breath test must be excluded.[6]

The analysis we employed in *Copelin* is equally applicable, and equally compelling, here. "The breathalyzer test ... provides time for reflection before action and ... consists of intentional efforts by the police to obtain evidence." *Copelin,* 659 P.2d at 1214. Because the police in the instant case acted deliberately in denying a defendant the right to a blood test, "application of the exclusionary rule will serve to deter future illegal police conduct." *Id. See also Whisenhunt v. State, Department of Public Safety,* 746 P.2d 1298, 1299 (Alaska

has a right to contact an attorney *"immediately* after an arrest." (Emphasis supplied.) In response to the state's argument that "it would be impracticable, unreasonable, and contrary to the intent of the implied consent statute" to allow an arrestee to contact a lawyer before taking a breath test, we disagreed, stating, " 'Immediately' means just that." *Id.*

**6.** Because of our conclusion that violation of Ward's statutory right requires exclusion of the results of his Intoximeter test, we need not address Ward's argument that his due process rights were violated.

1987) (violation of statutory right to consult counsel before being required to decide whether to submit to breathalyzer test requires suppression of breathalyzer results in a civil license revocation proceeding).

Furthermore, "a violation in this type of case ... has an effect on the defendant's ability to present a defense at trial." *Copelin,* 659 P.2d at 1214–15. We articulated our concern for the defendant's ability to put on a defense in *Whisenhunt.* "[A]n additional test of breath or blood ... may be of particular importance since it is a means of testing the reliability of the police administered test. The latter is not entitled to a conclusive presumption of accuracy." 746 P.2d at 1299 (citations omitted). Ward was unable, as a result of being denied a blood test, to attack the accuracy of his Intoximeter test. *See Lauderdale v. State,* 548 P.2d 376, 381 (Alaska 1976); *Municipality of Anchorage v. Serrano,* 649 P.2d 256, 259 (Alaska App. 1982). The results of his Intoximeter test must therefore be suppressed.

IV. WAS IT ERROR FOR THE TRIAL COURT TO INSTRUCT THE JURY THAT IT NEED NOT AGREE UNANIMOUSLY ON THE THEORY UNDER WHICH WARD WAS SHOWN TO HAVE DRIVEN WHILE INTOXICATED?

■ Alaska Statute 28.35.030, entitled "Operating a vehicle, aircraft or watercraft while intoxicated," states:

(a) A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle or operates an aircraft or a watercraft

(1) while under the influence of intoxicating liquor, or any controlled substance listed in AS 11.71.140—11.71.190;

(2) when, as determined by a chemical test taken within four hours after the alleged offense was committed, there is 0.10 per cent or more by weight of alcohol in the person's blood or 100 milligrams or more of alcohol per 100 milliliters of blood, or when there is

0.10 grams or more of alcohol per 210 liters of the person's breath; or

(3) while the person is under the combined influence of intoxicating liquor and another substance.

(b) Driving while intoxicated is a class A misdemeanor.

Ward argues that AS 28.35.030(a)(1) and (a)(2) "describe conceptually distinct offenses ... and that he was therefore entitled to an instruction requiring unanimous jury agreement as to which of these offenses had been proved in order to support a finding of guilt." The state, on the other hand, argues that AS 28.35.030(a) is a "statute defining an offense ... that ... can be committed in more than one way" and that therefore "the jury need not unanimously agree on a particular statutory theory in order to convict a defendant."

The state relies on *State v. James,* 698 P.2d 1161 (Alaska 1985), as did the court of appeals. *Ward,* 733 P.2d at 627. James was convicted of first degree assault under a statute analogous to AS 28.35.030. The statute at issue, former AS 11.41.200, provided in part:

(a) A person commits the crime of assault in the first degree if

(1) with intent to cause serious physical injury to another person, he causes physical injury to any person by means of a dangerous instrument;

. . . .

(3) he intentionally performs an act that results in serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life.

*James,* 698 P.2d at 1163 n. 2.

The trial court instructed the jury that it could find James guilty if it unanimously agreed that he had committed first degree assault as described in either AS 11.41.200(a)(1) or AS 11.41.200(a)(3). The jury was not required to reach unanimity as to one or the other theory, only as to the defendant's guilt of the offense.

*Id.* at 1162–63 (footnote omitted).

We held in *James* that the first degree assault statute described a single offense,

and that the requirement of a unanimous jury verdict was met as long as all members of the jury "agree that the defendant committed a single offense." *Id.* at 1167. The statute and instruction [7] at issue in the present case are similar to those in *James.* Like the court of appeals, we "see no reason to limit [the *James*] holding to assault cases ... [and] find no basis for distinguishing *James* from the present case." *Ward,* 733 P.2d at 627.

We listed four factors in *James* to determine whether a statute describes a single offense or multiple offenses. Those factors are:

> (1) the language of the statute itself; (2) the legislative history; (3) the nature of the proscribed conduct (whether the statute describes distinctly different kinds of conduct); and (4) the appropriateness of multiple punishment for the conduct charged in the indictment.

698 P.2d at 1165.[8]

Application of these factors to the instant case leads to the same result reached in *James.* First, the statutory language is phrased in the same manner as the statute at issue in *James.* Second, there is no legislative history available. *See Van Brunt v. State,* 653 P.2d 343 (Alaska App. 1982); *Van Brunt v. State,* 646 P.2d 872 (Alaska App.1982). Third, the conduct prohibited by the two clauses is similar; the alleged offender frequently will have violated both clauses as a result of the same act of imbibing intoxicating liquor. Finally, multiple punishment would be inappropriate for a person charged with violating both clauses.[9]

Although there is no available legislative history, it seems clear from this analysis that AS 28.35.030 describes several ways of committing the single offense of driving while intoxicated. Because AS 28.35.-030(a)(1) and (a)(2) describe merely different theories by which a person may be shown to have driven while intoxicated, it was not necessary that the jury agree unanimously upon the theory by which Ward violated the statute.

REVERSED.

---

7. The instruction at issue in Ward's trial stated:
   The defendant has been charged with one criminal offense, driving while intoxicated, which may be proven in either of two ways: the state must prove beyond a reasonable doubt that defendant drove either while under the influence of intoxicating liquor or with a level of .10 grams of alcohol per 210 liters of his breath. You must be unanimous in your verdict. You need not be unanimous, however, on which of the two theories the state has proven. It is sufficient that each of you is convinced of defendant's guilt beyond a reasonable doubt, under one theory or the other.

8. We relied heavily on *State v. Arndt,* 87 Wash. 2d 374, 553 P.2d 1328 (1976) in considering the challenged assault statute in *James.* The Wash-

ington Supreme Court employed somewhat different factors in determining that the state welfare fraud statute described several ways of committing the single offense of grand larceny. The factors it looked to were:
   [1] the title of the act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.
   553 P.2d at 1331.

9. *See State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320, 1322–23 (1982), where the Washington Supreme Court, relying upon *Arndt,* determined that its DWI statute, which is very similar to Alaska's, described a single offense.