29 F.3d 632
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alonzo Gutierrez MARQUEZ, Petitioner-Appellant,
v.
Bryan S. GUNN and Attorney General of California,
Respondents-Appellees.
 No. 93-55256.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1993.
Decided June 21, 1994.
 
 1
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,* Senior District Judge
 
 
 2
 MEMORANDUM**
 
 
 3
 Alonzo Gutierrez-Marquez was convicted of second-degree murder with use of a firearm. After exhausting his state court remedies, he filed a petition for a writ of habeas corpus in the district court. The district court denied his petition and Marquez now appeals. We review the district court's denial of a habeas corpus petition de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). We have jurisdiction under 28 U.S.C. Sec. 2253 and affirm.
 
 
 4
 The facts are undisputed. While at the Orange Coast Interfaith Shelter in Costa Mesa, California, Alonzo Gutierrez-Marquez and Regina Bisignano-Gisel were involved in a brief confrontational encounter. Minutes after the encounter, Marquez pulled a gun out of his waistband and pointed it at Gisel. After pausing about five seconds, Marquez squeezed the trigger, whereupon the gun fired. The bullet hit Gisel in the heart and lungs, killing her. Marquez left the shelter and was apprehended a short time later. He admitted shooting Gisel, but claimed that he thought the gun, which belonged to his brother, was inoperable and that he had intended only to frighten her.
 
 
 5
 Marquez was tried on charges of second-degree murder, voluntary manslaughter, and involuntary manslaughter. While the court instructed the jury that it must reach an unanimous verdict on the issue of guilt or innocence, the court did not give instructions regarding unanimity on the particular legal theories of express and implied malice for the second-degree murder charge. The jury returned a verdict of second-degree murder.
 
 DISCUSSION
 
 6
 The sole issue on appeal is whether under Schad v. Arizona, 501 U.S. 624 (1991), the jurors should have been told that they must unanimously agree on guilt and must also agree unanimously on the defendant's state of mind--either express malice or implied malice. In Schad, a plurality of the Supreme Court held that the defendant's due process rights were not violated when his conviction was obtained without jury agreement as to the defendant's state of mind on the alternative theories of first-degree premeditated murder and robbery felony murder. The plurality in Schad first explained that the critical issue was not one of jury unanimity, but instead "one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions." 111 S.Ct. at 2496. The plurality then noted that the Due Process Clause places limits on a state's capacity to define different states of mind as merely alternative means of committing a single offense; at some point the differences between the states of mind become so important that they must be treated as separate offenses subject to separate jury findings.
 
 
 7
 The plurality declined to "lay down any single analytical model for determining when two means are so disparate as to exemplify two inherently separate offenses." Schad, 111 S.Ct. at 2503. If, however,
 
 
 8
 two mental states are supposed to be equivalent means to satisfy the mens rea element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability[;] ... a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether.
 
 
 9
 Id. The plurality framed the ultimate question in the case as "not whether premeditated murder is necessarily the moral equivalent of felony murder in all possible instances," but "in particular whether robbery murder as charged in this case may be treated as thus equivalent." Id. The plurality acknowledged that not everyone would agree that premeditated murder and robbery felony murder were moral equivalents, but that such equivalence reasonably could be found. This was "enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense." Id. at 2503-04.
 
 
 10
 The plurality expressly limited its holding to finding that the alternative means of premeditated murder and robbery felony murder were moral equivalents, noting that other alternative mental states, even those involving different types of felony murder, might not be morally equivalent and, thus, could raise due process issues. In this case, Marquez argues that express and implied malice are not moral equivalents and, therefore, his due process rights were violated.
 
 
 11
 We are faced with the question of whether the California legislature and courts acted within constitutional confines in determining that express and implied malice are alternative means of satisfying the mens rea element for the single crime of second-degree murder. In determining whether express and implied malice are of sufficient moral equivalence, we start with a threshold presumption of legislative competence. Schad, 111 S.Ct. at 2501. Additionally, we give great weight to "history and widely shared practice as concrete indicators of what fundamental fairness and rationality require." Id.
 
 
 12
 The California legislature and courts treat express and implied malice as different means of establishing the requisite mens rea for all types of murder, i.e., malice. California Penal Code Sec. 188 defines malice, noting that malice can be express or implied. Express malice exists "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." Cal. Penal Code Sec. 188 (West 1988). Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." Id. In either event, "[w]hen it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought." Id.
 
 
 13
 Much like in Schad, these alternative means are both derived from the common law concept of "malice aforethought." At common law, courts defined murder as the unlawful killing of a human being with malice aforethought, express or implied. Express malice existed where there was a manifest intent to kill, while implied malice referred to all other types of "malice aforethought." The categories of implied malice murder were commonly recognized as felony murder, depraved heart murder, intent to commit serious bodily injury murder, and murder committed in an unreasonable passion. 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law, Sec. 7.1, at 183 (1986). For all of these categories of implied malice murder, malice was implied by law in situations where a deliberate intention to kill could not be proven, but a high degree of culpability could be inferred from the actions of the defendant.
 
 
 14
 Thus, express and implied malice do not so much describe different mens rea, but instead describe different methods of proving the mens rea element of murder. Indeed,
 
 
 15
 [t]here is no difference in the nature or degree of malice intended, whether it be called express or implied, when the terms are used in their appropriate sense. If properly applied they apply only to the evidence by which the existence of the malice is established. Both alike mean actual malice shown by proof to have really existed. And it is called implied malice when it is inferred from the naked fact of homicide, and express malice when it is established by other evidence.
 
 
 16
 Kansas v. Jensen, 197 Kan. 427, 435 (Kan.1966) (quoting Francis Wharton, Law of Homicide 104-05 (3d ed. 1907)).
 
 
 17
 It is especially noteworthy that, both historically and today, the concepts of express and implied malice have no direct bearing on determinations of first- and second-degree murder, other than establishing the essential element of malice. Instead, California's statute provides that premeditated murder and specified types of felony murder are first-degree murder and all other types of murder are second-degree, without reference to either express or implied malice. As the plurality in Schad noted, this type of degree-fixing statute has a long history. In fact, California's classification system is virtually identical to the first such degree-fixing statute enacted in Pennsylvania in 1794.
 
 
 18
 Thus, to the extent that the plurality in Schad relied upon the historical background of premeditated murder and felony murder, the discussion also is applicable to the issue of implied and express malice raised in this case. In fact, because express and implied malice historically are considered methods of proving the mens rea element of murder instead of different types of mens rea, we believe that history and common practice support the classifications in this case even more strongly than those at issue in Schad. Marquez has not presented any arguments rebutting the presumption of legislative competence or questioning the practice of considering express and implied malice as alternative ways of establishing malice aforethought.
 
 
 19
 Marquez does question the California courts' long-standing conclusion that in certain cases a jury need not be unanimous in deciding on a particular theory of guilt. With great thoroughness, Marquez traces the origins of this practice from first-degree murder cases to cases involving various theories of theft. He argues that applying the rationale of the theft cases, which involve a mere change in nomenclature, to first-degree murder cases, which involve discrete mental states, is unreasoned and erroneous. Therefore, he concludes, California's historical approach cannot suffice as a foundation for due process. Marquez' analysis is materially flawed.
 
 
 20
 Initially, Marquez fails to acknowledge the wide-spread acceptance of the rule that jury verdicts need not be unanimous on the exact mental state involved in certain criminal cases. The plurality in Schad specifically recognized that "[p]lainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." 111 S.Ct. at 2497 (quoting McKoy v. North Carolina, 494 U.S. 433 (1990) (Blackmun, J., concurring)). The plurality then concluded that it could see no reason why this analysis "should not apply equally to alternative means of satisfying the element of mens rea." Id. at 2497. While the Schad plurality applied this rule solely to premeditated murder and felony murder, nothing in the plurality's discussion indicates that the rule should be limited to these two states of mind.
 
 
 21
 Indeed, the plurality's analysis is consistent with a well-established state court rule, often referred to as the Sullivan rule, which does not require jury unanimity on the theory supporting conviction. This rule, which began with the case of People v. Sullivan, 173 N.Y. 122 (1903), first was applied to alternative theories of first-degree premeditated and felony murder. This rule has long been a part of California legal tradition and since its inception has been applied to a variety of crimes. See, e.g., People v. Davis, 8 Cal.App. 4th 28, 40-45 (Cal.App.1992) (discussing various applications of and limitations to the Sullivan rule). Furthermore, the precise question of whether the Sullivan rule should apply to the alternative theories of express and implied malice was considered in a pre-Schad decision by the Utah Supreme Court in State v. Russell, 733 P.2d 162, 167-68 (Utah 1987). In concluding that the Sullivan rule applied to alternative theories of second-degree murder,[1] the court in Russell reasoned,
 
 
 22
 Rejection of the Sullivan rule would ... result in juror disagreement over semantics in many cases in which they unanimously agree that the defendant committed the wrongful deed. Our experience is that jurors have a keen sense of justice that is well served by the Sullivan rule. By requiring semantic uniformity we encourage overcomplicated instructions and hung juries in cases in which the jurors actually agree upon the defendant's guilt.
 
 
 23
 733 P.2d at 167 (quoting State v. James, 698 P.2d 1161, 1165 (Alaska 1985)). While the opinion is not precisely on point because the court did not address the issue of moral equivalence, we nevertheless find the court's analysis persuasive.
 
 
 24
 We are convinced that the California courts' practice of considering express and implied malice as alternative means of proving the mens rea element of second-degree murder is supported by history and wide-spread practice. However, the Schad plurality noted that even though "history and current practice are significant indicators of what we as people regard as fundamentally fair and rational ways of defining criminal offenses," 111 S.Ct at 2503, history and current practice are not dispositive. Therefore, reviewing courts still must examine the challenged practice to see whether the "two means are so disparate as to exemplify two inherently separate offenses." Id. In making this determination, courts must consider whether the two means "reasonably reflect notions of equivalent blameworthiness or culpability." Id.
 
 
 25
 We initially note that because express and implied malice more accurately describe methods of proving the mental state of malice rather than specific mental states, these terms necessarily consist of several types of murder, each with a different level of moral blameworthiness. Under California law murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." Cal.Penal Code Sec. 187 (West 1988). Because malice is defined as the specific types of express and implied malice described above, under California law a person commits second-degree murder when that person unlawfully kills another, without premeditation, either: 1) intentionally; 2) when no considerable provocation appears; or 3) when the circumstances attending the killing show an abandoned or malignant heart.
 
 
 26
 Even a cursory examination of these types of murder reveals that the offenses are as morally equivalent as the offenses of premeditated murder and robbery felony murder and, in fact, considering actual blameworthiness, a closer look demonstrates that this case is an easier case than was Schad. In Schad, the plurality found that it was reasonable to conclude that alternative mental states of premeditation and robbery felony murder were moral equivalents. Yet at common law, felony murder applied to unintentional homicides which resulted during the commission of a dangerous felony. Nevertheless, the plurality in Schad did not find cogent the differences between these very distinct states of mind--one involving a deliberate intent to kill and one involving the reckless pursuit of an activity which carried a high risk of death. See Schad, 111 S.Ct. at 2503. Here, the alternatives are even less disparate: express malice requires only an intent to kill at the time of the act and implied malice requires either that no considerable provocation appears or that the circumstances attending the killing show an abandoned and malignant heart. In real terms, implied malice can certainly be considered a more highly culpable state than the state of mind required for robbery felony murder, where the robber may have absolutely no intention of killing or even harming anyone, while express malice can be considered a less culpable state than the deliberate premeditative state of mind required for first-degree premeditated murder.
 
 
 27
 Thus, on a theoretical level, we do not find any principled basis for concluding that express and implied malice have such disparate levels of culpability that the district court, by allowing a non-unanimous verdict, deprived Marquez of his due process rights. This conclusion is supported by case law. The magistrate judge, in the Report and Recommendation, painstakingly compared cases involving express and implied malice and concluded that the factual situations involved were very similar in terms of moral equivalence. We find the magistrate's analysis persuasive.
 
 
 28
 Marquez argues that express and implied malice are not morally equivalent because express malice requires specific intent and "implied malice cannot coexist with a specific intent to kill, i.e., express malice." Appellant's brief at 23. Marquez asserts that because these mental states are mutually exclusive, they are not equally blameworthy. He discusses the difference between express and implied malice at some length, but apart from his conclusory remarks distinguishing Schad he never squarely addresses just how this case and Schad are different. A defendant can be convicted of felony murder even if the death caused during the course of the felony was unintentional. Thus, the defendant does not need to possess an intent to kill of any kind, general or specific. Therefore, although felony murder can coexist with a specific intent to commit murder, intent to kill is not a requirement of felony murder and so may be entirely inconsistent with the specific intent required for premeditated murder. In any event, we are not persuaded that the mutual exclusivity of two alternative mental states has any bearing on blameworthiness. Instead, inconsistent theories may be necessary in precisely the cases which led to the development of the concept of implied malice--those cases where, for a variety of reasons, actual intent to kill may be difficult to prove, but could be inferred from the defendant's actions.
 
 
 29
 Furthermore, we are unpersuaded by Marquez's argument that express and implied malice are not morally equivalent because express malice is a requisite for attempted murder, while implied malice precludes a conviction for attempted murder. Both arguments were equally applicable to the mental states in Schad, yet the plurality held that premeditated murder and robbery felony murder were morally equivalent.
 
 
 30
 Much like the plurality in Schad, we recognize that not everyone will agree that these different mental states are morally equivalent, but "it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense." Schad, 111 S.Ct. at 2503-04. Because we conclude that express and implied malice reflect notions of equivalent blameworthiness, we hold that the California legislature and courts acted within permissible constitutional parameters in concluding that either express or implied malice could satisfy the mens rea requirement for the offense of second-degree murder.
 
 
 31
 The district court's denial of Marquez's petition for habeas corpus is AFFIRMED.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In Utah, a person can be convicted of second-degree murder if that person: 1) intentionally or knowingly caused the death of the victim; 2) intended to cause serious bodily injury; or 3) acted under circumstances which evidenced a depraved indifference to human life and engaged in conduct which created a grave risk of death to another. U.C.A. Sec. 76-5-203 (1953). The California Penal Code codifies the first and third theories as express and implied malice respectively, albeit using different language