**STATE of Missouri,
Plaintiff–Respondent,**

**v.**

**Edward Wesley SALEM,
Defendant–Appellant.**

**No. 15856.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 28, 1989.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Victor W. Head, 39th Judicial Circuit Public Defender, Carr L. Woods, Asst. Public Defender, Monett, for defendant-appellant.

PREWITT, Judge.

Following jury trial defendant was convicted of murder in the second degree and sentenced to twelve years' imprisonment. He appeals.

For his first point defendant contends that the trial court erred in overruling his motion to dismiss the information, follow-

ing MACH–CR 13.04, and erred in submitting the verdict director instruction, patterned after MAI–CR3d 313.04, because both stated in the disjunctive that defendant shot Joseph L. Schwyhart knowingly "or" with the purpose of causing serious physical injury to him. The information said, in part relevant here, that "defendant knowingly or with the purpose of causing serious physical injury to Joseph L. Schwyhart caused the death of Joseph L. Schwyhart by shooting him."[1]

Defendant cites *State v. Murry*, 580 S.W.2d 555 (Mo.App.1979) and *State v. Hook*, 433 S.W.2d 41 (Mo.App.1968), in support of his contention that disjunctive charges and submissions are improper. Such create a problem of jury unanimity. See *State v. Oswald*, 306 S.W.2d 559, 563 (Mo.1957). However, this rule and *Murry* and *Hook* are not applicable here. Both decisions refer to disjunctive submission of *acts*, one or more of which may constitute the same crime. *Murry*, 580 S.W.2d at 557; *Hook*, 433 S.W.2d at 43. These cases and others containing similar language, see 24 Mo.Dig.2d, Indictment and Information, Key No. 72, p. 346 (1984) are not in point.

 Here, just one act was charged, that of shooting Schwyhart, but the intent accompanying the act was submitted in the disjunctive. Necessarily, intent is something that is difficult to prove, except with relation to the act, and often is determined through circumstantial evidence. If defendant had either intent he was guilty of the charge.

In *State v. Brigham*, 709 S.W.2d 917, 921–922 (Mo.App.1986), this district considered an instruction submitting second degree murder which required a finding that "the defendant intended to take the life of or cause seriously bodily harm" to the victim. The opinion noted that the disjunctive submission of two distinct acts by which the offense could have been committed has been held erroneous but that "[n]o case has been cited or found which

---

1. Section 565.021.1(1) states:
 **Second degree murder, penalty.**—1. A person commits the crime of murder in the second degree if he: (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or * * *

condemns the disjunctive submission of alternative intents". 709 S.W.2d at 922. The court concluded that the alternative submission of the mental element was not error.

■ In *State v. Virdure*, 371 S.W.2d 196, 199 (Mo.1963), the defendant was held not misled or prejudiced by an information charging that he did "have in his possession or under his control" marijuana, "for the reasons that the quoted words relate to the same act". We believe that *Virdure* and *Brigham*, if not controlling, are at least persuasive here. The information was sufficient. It complied with the test of sufficiency of an information or indictment which is whether it contains all the essential elements of the offense and clearly apprises the defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution. *State v. Garrett*, 627 S.W.2d 635, 637 (Mo. banc), cert. denied, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982).

The instruction following the information was also proper. Although the jurors must agree that defendant committed the act of shooting Schwyhart, it was not necessary that they agree on his intent as long as they all agreed that he had an intent required for second-degree murder. Cf. *United States v. Freeman*, 619 F.2d 1112, 1118–1119 (5th Cir.1980), cert. denied 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981); *State v. James*, 698 P.2d 1161 (Alaska 1985). This point is denied.

For his second point defendant contends that the court erred in refusing to instruct, as he requested, on manslaughter and self-defense. He bases this upon "undisputed recent prior threats of violence" against the defendant by the victim and "equally undisputed statements" by a witness that after defendant "was followed and confronted in the dimly lighted parking lot by Schwyhart and almost instantaneously a shot was fired".

■ Defendant contends that the trial court should have instructed on involuntary manslaughter under § 565.024.1(1), RSMo

1986. That portion of the section provides that involuntary manslaughter is committed if a person recklessly causes the death of another. Such involuntary manslaughter can be a lesser included offense of second degree murder. § 565.025, RSMo 1986.

■ The trial court should only instruct the jury on manslaughter as a lesser included offense if there is an evidentiary basis for convicting the defendant on that charge. *State v. Anding*, 752 S.W.2d 59, 62 (Mo. banc 1988). See also *State v. Martin*, 602 S.W.2d 772 (Mo.App.1980).

■ Self-defense in a homicide matter involves a contention that the life was taken by an intentional act necessary because of apprehension of great bodily harm. *State v. Hafeli*, 715 S.W.2d 524, 529 (Mo. App.1986). See also *State v. Merritt*, 734 S.W.2d 926, 930 (Mo.App.1987) (in homicide self-defense implies that a defendant acted intentionally for his own protection or that of others).

■ The shooting occurred August 11, 1987, at approximately 10:00 p.m. on a parking lot outside a tavern where defendant and Schwyhart had just been. There was no evidence of any threats that evening or that either defendant or Schwyhart touched the other, nor was there testimony on what was said between them before the shooting. Apparently they had not talked inside the tavern.

The only person who testified as to what occurred outside the tavern just before and after the shooting is identified in the transcript as Allen Krause.[2] He said he and defendant had gone to the parking lot so he could show his car to defendant. Another witness said Schwyhart left the tavern just after defendant and Krause. Krause testified that as he was walking to his car he looked back and saw defendant and Schwyhart talking. He was the only other person on the parking lot at the time. He said defendant and Schwyhart were a "couple of feet apart" when the shot occurred. Krause was "[a]bout two" car lengths from them. He heard a gunshot, saw

2. Apparently he is the same person as "Alan Krause" mentioned in the legal file.

"something, but ... couldn't swear it was a weapon." Schwyhart clutched his chest, defendant shoved him three times and said, "Die, you son-of-a-bitch." Defendant then got in his vehicle and left.

The "prior threats" referred to by defendant occurred in mid or late July 1987, at least eleven days before the shooting. There was testimony that upon Schwyhart seeing defendant in a tavern he said to defendant "[w]hat's this I hear about you thumping Jason [Schwyhart's grandson] around?" Defendant denied that he had been "thumping Jason around" and Schwyhart replied that he did because Jason would not lie to him. Defendant responded that he was "just playing with him and I didn't mean to hurt him". Schwyhart then said, "I'll kick your ass all over this place". Defendant then went through the crowd and the discussion apparently ended.

There was no evidence indicating that the shooting was anything but intentional, nor that it was justified by self-defense. The only evidence at trial indicated that defendant intentionally shot Schwyhart and no evidence revealed that he might have done so for his protection or that of others. This point is denied.

Defendant states in his remaining point that the trial court erred in overruling his motion for new trial because it was supported by "newly discovered evidence indicating that the victim Schwyhart was armed with a weapon at the time of the incident".

The evidence offered at the hearing on the motion for new trial was from Mark Bernard. He was not present when the shooting occurred but stated that the next day Allen Krause said that when shot Schwyhart had been armed with a pistol and that Schwyhart had given the pistol to Nick Garrison after the shooting, prior to the time that law enforcement officers arrived. Bernard said that Krause told him that Garrison took the gun "from the scene there". Garrison was killed in an automobile accident prior to trial. There was no evidence at trial that Schwyhart was armed.

In response to a request for discovery, the record reflects that the state had given defendant's counsel a copy of a highway patrol report which stated that Bernard said he was told by Krause that Garrison took a gun from defendant after the shooting.

The trial court is vested with substantial discretion in deciding whether a new trial should be granted because of a claim of newly discovered evidence. *State v. Williams*, 652 S.W.2d 102, 114 (Mo. banc 1983). For a defendant to obtain a new trial on the basis of newly discovered evidence it must be shown: (1) the evidence must have come to defendant's knowledge after the end of the trial; (2) not previously learning of it was not due to any want of due diligence on defendant's part; (3) the evidence is so material that it will likely produce a different result on a new trial; and (4) the evidence is not cumulative only or merely of an impeaching nature. *State v. Luallen*, 654 S.W.2d 226 (Mo.App.1983).

The record indicates that defendant's attorney knew Bernard had talked to Krause about what Krause had seen just after the shooting. There was no testimony or other evidence indicating that an interview of Bernard might not have disclosed this testimony prior to trial. Bernard might have been impeached by prior statements to the highway patrol and his testimony was based on hearsay although it might have been used to impeach Krause.

The trial judge could have found that not learning of Bernard's testimony before the end of the trial was due to a failure of due diligence on defendant's part, and that the evidence was not so material that it was likely to produce a different result or that it was admissible merely for impeachment. Any of those determinations was sufficient to have denied the motion. This point is denied.

The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.