**STATE of Missouri, Respondent,**

v.

**Ellen T. KISER, Appellant.**

No. 21483.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 15, 1998.

James C. Cox, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cristi A. Ingalsbe, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant guilty of voluntary manslaughter, § 565.023,[1] and armed criminal action, § 571.015. The jury assessed the minimum authorized punishment for each offense, i.e., imprisonment for five years and three years, respectively. The trial court entered judgment per the verdicts. This appeal followed.

Appellant does not dispute the sufficiency of the evidence to support the verdicts. Her sole claim of error avers the trial court wrongly refused to give an instruction patterned on MAI–CR 3d 306.10 (10–1–95) denominated: "Justification: Use of Force in Defense of Premises." The evidence which,

1. References to statutes are to RSMo 1994.

according to Appellant, entitled her to such instruction is set forth below.

On August 16, 1996, Appellant, then age 32, and her 12–year–old daughter, Brandi, were in the yard of their home; Appellant was having a "yard sale."

Richard Hight, age 44,[2] resided with his mother across the street from Appellant.

Hight[3] entered Appellant's yard carrying some "jeans." He offered to sell the jeans to Appellant at half price.

Appellant noticed the jeans "still had a brown cap on them, commonly removed at the time of purchase." Additionally, the jeans "still had the tags on them." Appellant suspected the jeans "were probably stolen." She indicated she did not want to buy them, then diverted her attention to an "elderly gentleman" who was purchasing an item.

Hight departed. After he was gone, Appellant discovered a watch was missing. She concluded Hight had taken it.

A few days later, Appellant told Hight's mother about the incident. Hight's mother said she "was going to talk to him and send him over to speak with [Appellant]."

Hight subsequently appeared at Appellant's door. He angrily said, "What are you tripping on, cunt?" He threatened Appellant and told her to keep her mouth shut. According to Appellant, "He didn't want me to accuse him of stealing the watch to anybody."

After that confrontation, Appellant had no contact with Hight until the evening of August 24, 1996. Sometime after 7:00, Brandi told Appellant that Hight was in their back yard "tearing up our furniture and kicking the puppies." Appellant went out the back door and saw Hight "going down the alley." Hight said, "I'm going to burn your house down, and I'm going to kill you, bitch."

Appellant started toward a neighbor's house across the street to call the police (Appellant had no telephone). From her front yard, Appellant saw the neighbor was not home.

Hight "was coming around from the south." He was threatening, "I'm going to slit your throat and your daughter's throat."

Appellant told Brandi to call the police. Brandi went to the home of another neighbor and made a "911 call."

Meanwhile, Appellant was "yelling" and "cussing" at Hight.

At some point, Hight's mother attempted to convince him to come inside. Hight told his mother, "Get the fuck out of my face ... I'll knock the fuck out of you."

Hight's mother eventually got him inside, but he reappeared, angry and screaming. According to Appellant, Hight was "striking out" at his mother. Appellant explained, "He doubled up his fists, and she dodged from him."

Appellant avowed she was in fear of her life and Brandi's life. At some point, Appellant went in her house and got a "kitchen knife."

A "police car" approached Appellant's house. Appellant walked toward it and "flagged [her] arms." The vehicle stopped momentarily, then continued down the street. Asked how that made her feel, Appellant answered, "I was scared to death."

Hight came across the street, screaming and threatening Appellant and Brandi. Appellant told Brandi to "stay back."

As Hight approached, Appellant was at the edge of her driveway. Asked whether Hight had a weapon, Appellant answered, "All I could see was the flick of his lighter."

When Hight reached the edge of Appellant's driveway, Appellant tried to kick him, but he dodged. Appellant then stabbed Hight in the chest with the knife. Hight took a few steps back, then collapsed in the street.

Appellant placed the knife on a stump, then sat down in the driveway.

A neighbor used towels in an attempt to stop the bleeding from Hight's wound; however, he bled to death.

---

2. The evidence of his age appears in the testimony of the pathologist who performed the autopsy.

3. For brevity and clarity, we refer to Richard Hight by his surname. We mean no disrespect.

An investigating officer found a lighter near the area where Hight collapsed.

During the instruction conference, Appellant's lawyer tendered the instruction referred to in the second paragraph of this opinion. The trial court marked it "Instruction A" and refused it. Instruction A read:

"One of the issues as to Count I and II in this case is whether the use of force by the defendant against Richard Hight was in defense of premises. In this state the use of force (including the use of deadly force) to protect premises is lawful in certain situations.

A person can lawfully use force against another person in defense of premises if she is in possession of the premises and reasonably believes the other person is committing or attempting to commit the crime of trespass.

If a person has such a belief, she is then permitted to use that amount of force which she reasonably believes to be necessary to end or prevent that trespass.

But in defense of premises from a trespass a person is not permitted to use deadly force, that is force which she knows will create a substantial risk of causing death or serious physical injury, unless she reasonably believes the other person is attempting to commit arson or burglary upon her dwelling. And even then a person may use deadly force only if she reasonably believes the use of such force is necessary to prevent the commission of the crime of arson or burglary.

As used in this instruction, the term 'reasonable belief' means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

As to the issue of the defense of premises in this case you are instructed as follows:

If the Defendant was in possession of her home and property at 814 N. West Avenue and reasonably believed Richard Hight was attempting to trespass on those premises and if the defendant reasonably believed Richard Hight was attempting to commit arson or burglary on Defendant's dwelling and she reasonably believed that the use of deadly force was necessary to prevent the commission of arson or burglary then the Defendant acted in lawful defense of her premises.

The state has the burden of proving beyond a reasonable doubt that the Defendant did not act in lawful defense of premises. Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of premises, you must find the Defendant not guilty under Count I and II."

Although the trial court refused Instruction A, the court did, at Appellant's request, instruct the jury on self-defense and defense of another.

Appellant's point relied on reads:

"The trial court erred in failing to submit Appellant's proposed Instruction 'A' ... in that the following evidence was sufficient to demonstrate that Appellant reasonably believed there was an immediate danger of Mr. Hight entering onto her property for purpose of committing arson or burglary: (1) Mr. Hight had threatened to kill Appellant and her daughter and burn down Appellant's house; (2) Appellant was aware of the threat; (3) when Mr. Hight approached Appellant's house, he was flicking a lighter; (4) the lighter was later found by police ... near [Hight's] body; (5) the lighter was admitted into evidence."

In support of the point, Appellant cites § 563.036.2(2).[4]

---

4. Section 563.036 reads, in pertinent part:
   "1. A person in possession ... of premises ... may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent that he reasonably believes it necessary to prevent ... what he reasonably believes to be the commis-

sion or attempted commission of the crime of trespass by the other person.
   2. A person may use deadly force under circumstances described in subsection 1 of this section only:
   (1) ...

Superficially, Appellant's claim of error appears plausible. However, as henceforth explained, Appellant's position is meritless.

■ We begin our analysis by recognizing the obvious—Appellant used deadly force upon Hight. The use of deadly force is covered in subsection 2 of § 563.036.[5] Subdivision "(2)" of subsection 2, the provision relied on by Appellant, permits the use of deadly force only when the possessor of premises "reasonably believes it necessary to prevent what he reasonably believes to be an attempt by the trespasser to commit arson or burglary" upon the possessor's dwelling.[6]

In the instant case, Instruction A hypothesized that Appellant reasonably believed Hight was attempting to commit arson or burglary on Appellant's dwelling. However, nowhere in Appellant's point relied on or the argument following it does she identify any evidence sufficient to support a reasonable belief by her that he was attempting to commit *burglary* upon her dwelling.

Appellant and Brandi were both outside. Hight's threats had been to kill them, not to burglarize their dwelling. The only threat Hight had made about the dwelling was to burn it down. While that threat, coupled with Appellant's testimony that Hight came across the street flicking his lighter, might have been sufficient to cause Appellant to reasonably believe Hight intended to commit *arson* upon the dwelling—an issue we need not decide—such evidence is insufficient to support a reasonable belief that Hight intended to commit *burglary* upon the dwelling.

MAI-CR 3d 306.10 (10-1-95), the pattern instruction from which Instruction A was drawn, reads, *inter alia:* " ... if the defendant reasonably believed [name of victim] was attempting to commit (arson) (or) (burglary) on defendant's dwelling and he reasonably believed that the use of deadly force was necessary to prevent the commission of (ar-

son) (or) (burglary), then the defendant acted in lawful defense of premises."

Near the front of Volume I of MAI–CR 3d is a series of pages denominated "HOW TO USE THIS BOOK, OVERVIEW." At page "vi" of that segment, it reads:

"In the instructions, parentheses enclose words or phrases which will be either omitted or included, depending upon the facts of the case being submitted."

The above directive is obviously meant to ensure that no instruction will submit a hypothesis unless such hypothesis is supported by evidence. That is consistent with the well settled Missouri rule that an instruction should not be given in absence of evidence to support it. *State v. Agee*, 474 S.W.2d 817, 820[7] (Mo.1971); *State v. Wilhelm*, 774 S.W.2d 512, 517[4] (Mo.App. W.D.1989).

■ That does not mean alternative theories cannot be submitted. A court can instruct a jury on alternative theories if each is supported by evidence. *State v. Howard*, 896 S.W.2d 471, 492[47] (Mo.App. S.D.1995); *State v. Price*, 684 S.W.2d 566, 568[4] (Mo. App. E.D.1984).

■ Here, Instruction A set forth alternative theories justifying Appellant's use of deadly force against Hight in defense of her dwelling. The instruction hypothesized Hight was attempting to commit either *arson* upon Appellant's dwelling or *burglary* upon Appellant's dwelling. The use of the disjunctive conjunction "or" between "arson" and "burglary" in the next-to-last paragraph of Instruction A demonstrates that those hypotheses were submitted in the alternative. *Ashton v. Buchholz*, 359 Mo. 296, 221 S.W.2d 496, 502[10] (1949). It was thus necessary that the evidence support both hypotheses. *Id. Cf. Wolfe v. Harms*, 413 S.W.2d 204, 209–10[1] (Mo.1967); *Shaffner v. Farmers Mutual Fire Ins. Co.*, 859 S.W.2d 902, 908[14] (Mo.App. S.D.1993).

As Appellant and Brandi were outside the dwelling, it was unnecessary for Hight to enter the dwelling in order to carry out his

---

(2) When he reasonably believes it necessary to prevent what he reasonably believes to be an attempt by the trespasser to commit arson or burglary upon his dwelling; . . . ."

5. Footnote 4, *supra*.

6. As used in chapter 563, "dwelling" means "any building or inhabitable structure ... or a portion thereof, which is for the time being the actor's home or place of lodging." Section 563.011(2).

**130**

threats against them. Furthermore, nothing he said evinced an intent to enter Appellant's dwelling. We therefore hold the evidence insufficient to support the hypothesis in Instruction A that Appellant reasonably believed Hight was attempting to commit *burglary* on Appellant's dwelling. That being so, Instruction A was improper.

■ A trial court does not err when it rejects an improper instruction. *State v. Brigham,* 709 S.W.2d 917, 922[7] (Mo.App. S.D.1986). Appellant's claim of error is without merit.

In so holding, we do not imply Instruction A would have been proper had it hypothesized only that Appellant reasonably believed Hight was attempting to commit *arson*[7] on Appellant's dwelling. As noted earlier, there is an arguable issue as to whether the evidence was sufficient to support such a belief by Appellant—an issue we were not obliged to decide.

More importantly, however, Missouri cases suggest that deadly force may be used in defense of a dwelling only when a trespasser is attempting to enter the dwelling or burn it in order to kill or inflict serious physical injury on someone inside. *See: State v. Lumpkin,* 850 S.W.2d 388, 391–92 (Mo.App. W.D.1993); *State v. Battle,* 625 S.W.2d 252, 254 (Mo.App. E.D.1981); *State v. Ivicsics,* 604 S.W.2d 773, 776–78 (Mo.App. E.D.1980).

Here, as underscored earlier, neither Appellant nor Brandi was inside Appellant's dwelling when Appellant stabbed Hight. Consequently, it is arguable that even if the evidence were sufficient to cause Appellant to reasonably believe Hight was attempting to commit arson on Appellant's dwelling, Appellant could not properly use deadly force inasmuch as no one was in the dwelling. However, it is unnecessary to decide that question and we leave it unanswered.

Judgment affirmed.

GARRISON, P.J., and PREWITT, J., concur.

7. Sections 569.040–.050.