Michael A. LAWSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10164.

Court of Appeals of Alaska.

Nov. 4, 2011.

Tracey Wollenberg, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

A jury convicted Michael A. Lawson of felony murder and other crimes for the shooting death of Bethany Correira. At trial, Lawson did not dispute that he shot Correira and that she died as a result, but the jury heard conflicting evidence on the circumstances that led to the shooting. Some of the State's evidence suggested Correira

was killed during an attempted rape or kidnapping, while other evidence suggested she was killed after she walked in on a drug deal. The jurors were instructed that they could convict Lawson of felony murder without choosing among these possible scenarios, as long as they found beyond a reasonable doubt that Lawson killed Correira while committing one or more of the felonies alleged by the State. The jury returned a general verdict of guilt, so it is not known which theory or theories formed the basis of its verdict.

Lawson argues that the trial court misinstructed the jury on the requirement of jury unanimity relating to the felony murder charge. The trial judge told the jurors that they, *as a group*, did not have to unanimously agree on which predicate felony Lawson was committing (or attempting to commit) when he shot Correira. The trial judge also told the jurors that they, *as individuals*, did not have to reach a firm conclusion on which predicate felony Lawson committed, as long as they were convinced beyond a reasonable doubt that Lawson committed at least one of the predicate felonies. Lawson contends that both of these jury instructions were error.

Lawson raises two other challenges to his felony murder conviction. He argues that the State failed to present sufficient evidence of the various predicate felonies to allow those theories of felony murder to go to the jury. And Lawson argues that the State failed to satisfy the *corpus delicti* rule with respect to those predicate felonies.

We conclude that it is unnecessary to resolve these claims, because the jury unanimously agreed that Lawson was guilty of murder under the other subsections of the second-degree murder statute—subsection (a)(1), the provision that applies when a person causes the death of a person while acting "with intent to cause serious physical injury to another person," or "knowing that [their] conduct is substantially certain to cause death or serious physical injury to another person," or subsection (a)(2), the provision that applies when a person causes the death of a person while acting with manifest indifference to the value of human life.[1] Law-

son's conviction under subsections (a)(1) or (a)(2) of the statute merged with his felony murder conviction for purposes of judgment and sentencing. Therefore, even if we were to reverse Lawson's conviction under the felony murder theory, this reversal would have no effect on Lawson's second-degree murder conviction under alternative theories, or on his sentence.

Lawson also challenges the superior court's mid-deliberation instructions to the jury. He argues, for the first time on appeal, that by telling the jurors there was no dispute at trial that Lawson shot and killed Correira, the trial judge essentially directed a verdict on the weapons charge and on the element of each homicide count that required the jury to find that Lawson caused Correira's death. He also argues that the trial judge improperly commented on the evidence by directing the jury's attention to the State's evidence that Correira was shot at close range. For the reasons explained below, we conclude that Lawson has not shown plain error, and we affirm Lawson's convictions.

### Background

Bethany Correira was reported missing on May 4, 2003, after her mother went to her apartment and found that her door was unlocked and that her wallet, keys, and cell phone were on the kitchen counter. Correira had recently moved into a complex of apartments in the Bootlegger's Cove area of Anchorage, and the police investigation into her disappearance soon focused on the manager of those apartments, Michael Lawson. Correira had agreed to do some on-site maintenance and cleaning for the owners of the apartment complex, and shortly before she disappeared Correira told her boyfriend that Lawson had arranged to train her to show apartments to prospective tenants.

Although the police early on had evidence linking Lawson to the suspected crime scene and to a suspicious fire in one of the apartments, the break in the investigation did not come until February 2004, when Lawson's brother, Robert Lawson, told the police

---

1. AS 11.41.110(a)(1)-(2).

where to find Correira's body. The police located Correira's remains in a gravel pit off the Parks Highway, and from clothing and a bullet found near the remains, investigators determined that Correira had died from a wound to the chest from a bullet shot at close range.

In April 2004, Robert Lawson agreed to participate in police-monitored telephone calls to Michael Lawson. During those phone calls, Lawson told his brother that he shot Correira by accident after she walked in on him cutting up "Coca–Cola" (*i.e.*, cocaine). Lawson denied sexually assaulting Correira. When Robert Lawson asked his brother why her body was unclothed, Lawson explained that Correira was stripped of clothes to prevent her from running away. Robert Lawson committed suicide before Lawson's trial, but a redacted version of these phone conversations was played to the jury.

At trial, the State relied on Lawson's admissions to his brother to argue that Lawson might have killed Correira during a kidnapping or drug offense. The State also presented evidence that Correira's bra was pushed up over her breast at the time she was shot, suggesting that she might have been killed during a sexual assault. The State only charged one of these predicate felonies, kidnapping, as a separate count. Superior Court Judge John Suddock instructed the jury that it could convict Lawson of felony murder without determining which of these possible felonies Lawson committed.

Later, in response to a jury question during deliberations, Judge Suddock further instructed the jury that there was no dispute that Lawson shot and killed Correira—the only dispute was his state of mind at the time.

The jury convicted Lawson of second-degree felony murder. The jury separately convicted Lawson of second-degree murder under alternative theories. In addition, the jury convicted Lawson of tampering with physical evidence,[2] and third-degree weapons misconduct.[3] The jury was unable to reach verdicts on the remaining charges of first-degree murder, kidnapping, and arson. At Lawson's sentencing hearing, the superior court merged the two second-degree murder verdicts into a single conviction for purposes of judgment and sentencing.

### Discussion

*Lawson makes several claims of error relating to his felony murder conviction.*

Lawson contends that the superior court's jury instructions pertaining to felony murder deprived him of his right to a unanimous verdict.

As we have explained, the State pursued the felony murder charge under the theory that Lawson was committing (or attempting to commit) one or more of four possible predicate felonies when he killed Correira: first-degree sexual assault, second-degree sexual assault, kidnapping, or third-degree controlled substances misconduct (possession of cocaine with intent to sell).

Judge Suddock told the jurors that they, as a group, did not have to unanimously agree on which predicate felony Lawson committed when he shot Correira, and the judge also told the jurors that they, as individuals, did not have to decide which predicate felony Lawson committed, as long as they were convinced beyond a reasonable doubt that Lawson committed at least one of the predicate felonies.

Lawson argues that this instruction violated his right to jury unanimity under state law[4] and his right to due process under the state and federal constitutions[5] by allowing the jury to convict him of felony murder without reaching a unanimous decision on

**2.** AS 11.56.610(a)(1).

**3.** AS 11.61.200(a)(1).

**4.** Lawson argues that the right to jury unanimity is based on Alaska Const. art. I, § 11 and Alaska R.Crim. P. 31(a). As explained in this opinion, the Alaska Supreme Court has interpreted Criminal Rule 31(a) to require that a jury be unani-

mous in its conclusion that the defendant committed a single offense described by statute. *State v. James*, 698 P.2d 1161, 1165 (Alaska 1985).

**5.** U.S. Const. amends. VI, XIV; Alaska Const. art. I, §§ 7, 11.

which felony or felonies he committed. He also argues that the instruction violated his due process right to proof beyond a reasonable doubt of every fact necessary to constitute the crime by informing the jurors that they did not have to find that he committed a particular felony or felonies, as long as they found beyond a reasonable doubt that he caused Correira's death while committing or attempting to commit one of the felonies alleged by the State.[6] Lawson argues that these errors require reversal of his felony murder conviction and of his conviction of second-degree murder under alternative theories.

In *State v. James*, the Alaska Supreme Court held that when a jury is instructed on alternative means of committing a single offense, the jury need not be unanimous on the precise means employed in committing that offense.[7] In reaching that decision, the court adopted the majority rule in the landmark New York case *People v. Sullivan*.[8] In *Sullivan* the defendant had been charged with first-degree murder under two theories: premeditated murder and felony murder. The *Sullivan* court held that the jury was not constitutionally required to agree on which theory the government proved:

> It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the [jury's] conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other.... So, in this case, it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one. *It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.*[9]

Following the rationale in *Sullivan*, the supreme court in *James* interpreted the unanimity requirement in Criminal Rule 31(a) [10] as applying only to the jury's ultimate conclusion that the defendant committed the single offense described in the statute.[11] Since *James*, Alaska courts have upheld general verdicts in cases in which jurors were allowed to convict the defendant based on alternative interpretations of the facts of a criminal episode, as long as the jurors were unanimous that the defendant's conduct and culpable mental state(s) satisfied all of the elements of the crime charged.[12]

6. U.S. Const. amend. XIV; Alaska Const. art. I, § 7; *see Huitt v. State*, 678 P.2d 415, 422 (Alaska App.1984).

7. 698 P.2d at 1165.

8. *Id.* at 1164–65 (citing *People v. Sullivan*, 173 N.Y. 122, 65 N.E. 989 (1903)).

9. *Id.* at 1164 (quoting *Sullivan*, 65 N.E. at 989–90) (quotation marks omitted; italics added in *James* ).

10. Criminal Rule 31(a) provides: "The verdict shall be unanimous. It shall be returned by the jury to the judge in open court."

11. *James*, 698 P.2d at 1165.

12. *See Ward v. State*, 758 P.2d 87, 91–92 (Alaska 1988) (holding that jurors need not be unanimous on whether the defendant drove a motor vehicle while impaired or with a blood alcohol level of .10 percent or greater); *Ragsdale v. State*, 23 P.3d 653, 658–59 (Alaska App.2001) (holding

that in prosecution for second-degree sexual assault jurors need not be unanimous on whether the defendant engaged in sexual penetration with a person he knew was incapacitated or with a person he knew was unaware a sexual act was occurring); *Baker v. State*, 22 P.3d 493, 500–01 (Alaska App.2001) (holding that in prosecution for interference with official proceedings jury need not be unanimous on whether the defendant offered a witness a bribe or threatened her during a series of phone conversations); *Baker v. State*, 905 P.2d 479, 489 (Alaska App.1995) (holding that in prosecution for robbery, jurors need not be unanimous on whether the defendant, or one of his co-robbers, was the one who struck the victim); *Norris v. State*, 857 P.2d 349, 353–54 (Alaska App.1993) (holding that in prosecution for second-degree murder, jurors need not be unanimous on whether the defendant purposely fired his rifle at the victim or whether, instead, the victim grabbed the pointed rifle and it discharged by accident); *Totemoff v. State*, 866 P.2d 125, 129 (Alaska App.1993), *rev'd on other grounds*, 905 P.2d 954 (Alaska 1995) (holding that jury unanimity was not required on whether

Alaska courts have not had occasion to decide whether this rule applies when a defendant is charged with alternative means of committing felony murder. Lawson argues that the rule should not apply in this context because the predicate felonies enumerated in the felony murder statute proscribe "distinctly different kinds of conduct"—conduct as various as sexual assault and misconduct involving a controlled substance—that often involve "vastly different predicate facts." [13] He argues that each alternative means of committing felony murder should be treated as a separate offense, rather than as an alternative means of committing a single offense, and that jury unanimity is therefore required.

To support this argument, Lawson relies on cases that do not follow the *Sullivan* rule (the rule adopted by the Alaska Supreme Court in *James*).[14] He also relies on cases unlike this one—cases that involved evidence of multiple offenses, and thus presented the risk that different jurors would convict the

defendant based on different underlying criminal acts.[15] In Lawson's case, there was only one murder. The majority of courts that have considered the issue have not required the jury to unanimously agree on the predicate felony in cases in which the state has presented evidence of alternate predicate felony offenses to support a single charge of felony murder.[16]

Lawson's stronger challenge is to the second part of the court's instruction, which informed the jurors that, individually, they did not have to find that Lawson caused Correira's death during the commission of a particular felony, as long as they concluded beyond a reasonable doubt that he killed her while committing at least one of the felonies alleged by the State. In arguing that this instruction was error, Lawson relies primarily on the Supreme Court's holding in *In re Winship* that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of

the defendant acted as a principal or accomplice in the illegal taking of deer).

**13.** Under AS 11.41.110(a)(3), a person is guilty of second-degree (felony) murder if:

(3) under circumstances not amounting to murder in the first degree under AS 11.41.100(a)(3), while acting either alone or with one or more persons, the person commits or attempts to commit arson in the first degree, kidnapping, sexual assault in the first degree, sexual assault in the second degree, sexual abuse of a minor in the first degree, sexual abuse of a minor in the second degree, burglary in the first degree, escape in the first or second degree, robbery in any degree, or misconduct involving a controlled substance under AS 11.71.010(a), 11.71.020(a), 11.71.030(a)(1) or (2), or 11.71.040(a)(1) or (2) and, in the course of or in furtherance of that crime or in immediate flight from that crime, any person causes the death of a person other than one of the participants[.]

**14.** *See United States v. Gipson*, 553 F.2d 453 (5th Cir.1977), *disavowed in Schad v. Arizona*, 501 U.S. 624, 634–36, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), *State v. Benite*, 6 Conn.App. 667, 507 A.2d 478, 483 (1986); *Pierce v. State*, 911 A.2d 793, 798 & n. 26 (Del.2006) (citing *Probst v. State*, 547 A.2d 114, 121 (Del.1988) (citing *Gipson*, 553 F.2d at 456–59)); *State v. Harris*, 141 N.J. 525, 662 A.2d 333, 351–52 (1995) (citing *State v. Parker*, 124 N.J. 628, 592 A.2d 228, 232 (1991) (citing *Gipson*, 553 F.2d at 458–59));

*State v. Lomagro*, 113 Wis.2d 582, 335 N.W.2d 583, 591–92 (1983).

**15.** *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999); *United States v. Edmonds*, 80 F.3d 810 (3d Cir.1996).

**16.** *See, e.g., People v. Pride*, 3 Cal.4th 195, 10 Cal.Rptr.2d 636, 833 P.2d 643, 675–76 (1992) (holding that unanimity was not required on the sexual assault or attempted sexual assault underlying the defendant's felony murder conviction); *State v. Beach*, 275 Kan. 603, 67 P.3d 121, 135 (2003) (holding that the sale of methamphetamine and aggravated robbery were alternative means of committing felony murder and that unanimity was not required on the means as long as there was sufficient evidence to sustain a jury verdict on both); *People v. Guffie*, 749 P.2d 976, 980 (Colo.App.1987) (holding, as a matter of plain error, that the jurors did not have to unanimously agree on the specific victim of the predicate felony in convicting the defendant of felony murder, provided each juror was convinced beyond a reasonable doubt that the felony was committed against any one or more of the alternative victims); *cf. Gilson v. State*, 8 P.3d 883, 902–03 (Okla.Crim.App.2000) (holding that the commission of child abuse and the permitting of child abuse were alternative means of committing first-degree murder by child abuse, and that jury unanimity on the means was not required). *But see State v. Boots*, 308 Or. 371, 780 P.2d 725, 731 (1989), *as limited in State v. King*, 316 Or. 437, 852 P.2d 190, 192–93 (1993).

every fact necessary to constitute the crime with which he is charged." [17]

*Winship* of course does not resolve which fact is "necessary" to constitute the predicate felony element of felony murder: the fact that the defendant committed one of the felony offenses enumerated in the statute, or the fact that he committed a *specific* felony. The Supreme Court has repeatedly held that legislatures have considerable latitude in defining what facts are "necessary to constitute the crime" under *Winship*. [18]

We have located little helpful authority on point, and the State does not brief the issue. The California Supreme Court has held that an individual juror may vote to convict a defendant without deciding whether the defendant was the direct perpetrator of an offense or an aider and abettor. [19] But in California, as in Alaska, the legislature has affirmatively abrogated the distinction between accessories and principals. [20] It arguably follows—though the issue has not been decided in this jurisdiction—that a juror need not decide if a defendant was an accessory or a principal, as long as the juror is convinced beyond a reasonable doubt that the defendant was one or the other or both.

But we doubt a corresponding rule would be constitutional in the context of this case. In *Winship*, the Supreme Court emphasized that the reasonable doubt standard "is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' " [21] In Lawson's case, the evidence the State offered in support of the predicate felonies was, as the trial judge recognized, "painfully skinny." The court's felony murder instruction thus invited the jurors to convict Lawson based on their strongly held beliefs that he killed Correira during the commission of one or more of these felonies, without requiring those jurors to test that belief against the State's proof of each element of a particular felony offense.

*Any errors in Lawson's murder conviction are harmless because that conviction was merged with his conviction of second-degree murder on alternative theories.*

■ As we have explained, the jury unanimously agreed that Lawson was guilty of second-degree murder under the other subsections of the statute: subsection (a)(1) (causing the death of another person while acting with intent to cause serious physical injury, or knowing that one's conduct is substantially certain to cause death or serious physical injury to another person) or subsection (a)(2) (causing the death of another person while acting with manifest indifference to the value of human life). [22] Consequently, we do not have to resolve Lawson's challenges to the felony murder verdict unless we conclude that the errors in that verdict, if any, tainted the jury's separate verdict with respect to subsections (a)(1) and (a)(2).

■ Lawson has not challenged his conviction under these alternative theories, except to argue that the evidence the State presented in support of the felony murder charge prejudiced the jury's decision on this separate count. Lawson argues that the court should have excluded evidence of the predicate offenses because it was insufficient to go to the jury and because the State did not present enough evidence corroborating his admissions to his brother to establish the *corpus delicti* of the offenses.

The flaw in this claim of prejudice is that, even if the State had not charged Lawson

---

**17.** 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**18.** *Schad,* 501 U.S. at 638, 111 S.Ct. 2491; *Patterson v. New York,* 432 U.S. 197, 210–11, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Steve v. State,* 875 P.2d 110, 118 (Alaska App.1994).

**19.** *People v. Santamaria,* 8 Cal.4th 903, 35 Cal. Rptr.2d 624, 884 P.2d 81, 89 (1994) (in bank).

**20.** *See* Cal.Penal Code § 971 (West 2011); AS 11.16.100; former AS 12.15.010 (1972); *Andrew v. State,* 237 P.3d 1027, 1032 (Alaska App.2010)

(noting that the distinction between principals and accessories before the fact was abrogated in Alaska by statute more than one hundred years ago).

**21.** 397 U.S. at 364, 90 S.Ct. 1068 (quoting Dorsen & Rezneck, *In Re Gault and the Future of Juvenile Law,* 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967)).

**22.** AS 11.41.110(a)(1)-(2).

with felony murder, the evidence that Lawson killed Correira while committing other felony offenses would have been relevant to prove Lawson's intent to commit second-degree murder under the alternative theories. In addition, the State's evidence that Lawson committed the predicate offenses was not strong and not so inflammatory that it would encourage the jury to ignore the court's directive to decide each count independently.

■ Lawson also argues that he was prejudiced because the jury was legally bound to convict him of extreme indifference murder once it convicted him of felony murder, because the mental state of "extreme indifference" is legally equivalent to the heightened recklessness the State establishes when it proves the defendant committed one of the felonies listed in the felony murder statute. As Lawson points out, we have previously observed that, in enacting the felony murder statute, the legislature intended to equate the intent to commit an enumerated felony with the intent required to establish other forms of second-degree murder, including extreme indifference murder.[23]

■ But this is not a common-sense equivalence that would be obvious to any juror. Nothing in the jury instructions or the parties' arguments suggested that the jury was obliged to convict Lawson of extreme indifference murder if it found he killed Correira during the commission of a felony. As just noted, the jurors were instructed to decide each count independently, and we presume that jurors follow the court's instructions.[24]

■ Lawson also argues that he was prejudiced by the admission of his statements to his brother that he might be eligible for the death penalty under federal law because he killed Correira during the commission of a drug offense. This claim of prejudice is undermined by defense counsel's decision not to draft a cautionary instruction on this issue when Judge Suddock gave him that opportunity. A cautionary instruction is ordinarily presumed to cure this type of prejudice.[25]

We conclude that Lawson has not shown that the State's evidence in support of the felony murder charge prejudiced the jury's decision to convict him of second-degree murder under alternative theories. Therefore, we need not decide if the court's felony murder instruction was erroneous. Even if we were to reverse that conviction, the reversal would have no effect on Lawson's sentence. Any error is therefore harmless beyond a reasonable doubt.[26] For this same reason, we need not resolve Lawson's claims that the State presented insufficient evidence of the predicate offenses for felony murder, and that the State failed to establish the *corpus delicti* of those offenses.

*The court did not commit plain error in its mid-deliberation instructions to the jury.*

During deliberations, the jury sent the trial judge the following note:

> In situations where there are a series of events that could have caused a death, where it is not possible to positively say which one or ones resulted in death, does case law exist that the court could share?

The prosecutor suggested this clarifying instruction:

> [I]n situations where there are a series of events that could have caused a death, you do not have to be unanimous regarding which event or act caused the death as long as the jury [is] unanimous that the elements of the crime are proved beyond a reasonable doubt.

Lawson's attorney urged the court to revisit the felony murder/jury unanimity instruction, arguing that it was "amorphous." When the court declined to do so, the attorney asked the court in the alternative to instruct the jurors that there was no case law to aid them in their determination of this question.

Judge Suddock found that when the jury referred to "a series of events that could

**23.** *Todd v. State*, 884 P.2d 668, 683 (Alaska App. 1994).

**24.** *Whiteaker v. State*, 808 P.2d 270, 277 (Alaska App.1991).

**25.** *Roth v. State*, 626 P.2d 583, 585 (Alaska App. 1981).

**26.** *See Carella v. California*, 491 U.S. 263, 266–67, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).

have caused a death" it was "probably talking about what happened in the room before the bullet went off." He concluded that he should instruct the jury that it did not matter what happened in the room, as long as the jury found beyond a reasonable doubt that Lawson had the required *mens rea* when he shot Correira.

■■■ In addressing the jury on this issue, the judge stated, as a preliminary matter:

> There is no dispute in this case. The parties have both stood before you in final argument. There is no dispute but that Michael Lawson discharged a weapon and that a bullet entered the chest of Bethany Correira.

The court went on to discuss the homicide counts, instructing the jurors that to convict Lawson of first-degree murder or second-degree murder under alternative theories they did not have to decide definitively what happened, so long as they concluded that, when Lawson shot Correira, he had the requisite *mens rea* to commit the offense.

With respect to the felony murder charge, the judge told the jurors that they *did* "have to figure out something specific about what happened in the room," and he described the four predicate offenses. He instructed the jurors that, in the alternative, they could conclude that "I can't say which of those four it was, but I know it had to be, in the context of this case, one of the four."

Lawson argues that these instructions "affirmatively removed from the jury the determination of the *actus reus* of the homicide counts." He argues that, by telling the jury that there was "no dispute but that Michael Lawson discharged a weapon," the judge also directed a verdict on the felon-in-possession weapons charge. Lawson argues that these errors were exacerbated by the court's instruction on judicial notice, which directed the jury to accept judicially noticed facts as true. He argues that his convictions should be reversed because of these errors, even

though he did not actively dispute that he shot Correira.

Lawson raises these claims for the first time on appeal. In his reply brief, he argues that he preserved these objections because, in superior court, he made alternative suggestions as to how the judge should respond to the jury's question. But those suggestions had no relationship to the claims he raises on appeal. If Lawson had objected on the ground that the court had directed a verdict on the homicide and felon-in-possession counts, the court could have given a corrective instruction.

Lawson relies primarily on *Smallwood v. State* to argue that the trial judge impermissibly directed verdicts for the prosecution.[27] In *Smallwood*, this court concluded that the judge essentially directed a verdict for the State because it took judicial notice of one of the essential elements of the charged offense.[28] This case is distinguishable. Judge Suddock did not tell the jury that he was taking judicial notice of the fact that Lawson "discharged a weapon and that a bullet entered the chest of Bethany Correira"; nor did the judge tell the jury that it had to take that fact as conclusively proven. Judge Suddock merely related, accurately, that there was no dispute on this issue at trial. The jury was unlikely to be confused on this issue, as the jury instructions on each homicide count required the jury to find beyond a reasonable doubt that Lawson caused Correira's death. We conclude that Lawson has not shown that the court's instructions to the jury impermissibly directed a verdict on the homicide counts.

Lawson has not shown that he was prejudiced in any other way by the court's declaration that the cause of Correira's death was undisputed. Lawson's attorney conceded in closing argument that Lawson shot and killed Correira—his defense was that the shooting was accidental and that the jury should return a verdict of manslaughter. Lawson's attorney also conceded that the only disputed issue before the jury was Lawson's mental state at the time he shot Correira.[29]

---

27. 781 P.2d 1000 (Alaska App.1989).

28. *Id.* at 1003, 1004–05.

29. Lawson's attorney told the jury:
 [T]he fact that someone died is not an issue in dispute, and it's something that isn't critical to

As for Lawson's claim that the court directed a verdict on the felon-in-possession charge, that conviction was entered in a bifurcated proceeding, so the jury did not consider the charge until after it had convicted Lawson of second-degree murder. At that point, the jury had clearly found that Lawson possessed a gun. Therefore, our conclusion that the court did not impermissibly direct a verdict on the homicide counts resolves Lawson's claim that the court directed a verdict on the felon-in-possession charge.

We find no plain error because Lawson has not shown that the superior court impermissibly directed verdicts on the homicide or felon-in-possession counts, and because he has not shown that he was prejudiced by the court's instructions to the jury.

*Lawson has not shown that the superior court committed plain error by commenting on the evidence.*

Lawson next argues, for the first time on appeal, that Judge Suddock impermissibly commented on the evidence when he explained "extreme indifference" murder to the jury in response to the jury's question. In particular, Lawson points to the judge's statement that to convict Lawson of extreme indifference murder

> you would need to find beyond a reasonable doubt, no matter what went on in the room, that it had to necessarily entail conduct performed under circumstances manifesting an extreme indifference to the value of human life.... [T]hat doesn't mean that the crime of misconduct [involving a] controlled substance third degree has to be shown to manifest extreme indifference or ... kidnapping or any other crime in the world. It simply says that doing what he was doing at the relevant time, holding the gun where he was holding it, doing whatever he was doing with the gun under the circumstances he was doing it, whatever it was, all of that was performed under circumstance[s] manifesting an extreme indifference to the value of human life.

> your determinations of what level of offense this is. What is [at issue] is the mental state, the circumstances of what happened and how. So, as you view the evidence and you consider

Lawson argues that by telling the jurors that they should consider the impact of "holding the gun where he was holding it," the trial judge impermissibly conveyed his opinion on the importance of the testimony of the State's firearm expert, Robert Shem, that the fatal shot was fired at a distance "greater than contact and less than one foot." But even if it was error for the judge to comment on particular evidence, Lawson has not shown that he was prejudiced. Both parties relied on this evidence to argue their opposing positions on extreme indifference murder.

The State argued that the evidence that Lawson held a loaded gun with his finger on the trigger approximately one foot from Correira established the degree of recklessness necessary to convict him of extreme indifference murder. Lawson, in turn, argued that this close proximity was indicative of an accident. Thus, the evidence itself was undisputed, and both parties argued that it supported their theory of the case. The judge's statement did not suggest that one theory was more persuasive than the other.

■ Lawson also argues that the court's reference to "what went on in the room" directed the jury's decision on where the critical events occurred. But again, Lawson never disputed that the shooting occurred in the duplex. Moreover, although the indictment identified the offenses as taking place at or near Anchorage, the element instructions did not require the jury to find that any of the offenses occurred in a particular place.

■ Lawson argues that by telling the jury that it could find extreme indifference murder without finding that third-degree controlled substance misconduct or kidnapping or some other offense occurred, the court limited the jury's consideration of evidence that was relevant to his guilt on the homicide counts. But the judge's comments were a correct statement of the law distinguishing extreme indifference murder from felony murder. Nothing in the court's instructions suggested that if the jury conclud-

> these charges, you need to be looking at what state of mind a person may have had that resulted in a death.

ed Lawson did *not* kill Correira during the commission of some other crime, the jury could not consider that fact in deciding whether the State had established the *mens rea* of extreme indifference murder. We conclude that Lawson has not shown that the court's mid-deliberation instruction on extreme indifference murder was plain error.

Lawson also argues, again for the first time on appeal, that the court had a duty to clarify the mid-deliberation jury question.[30] Judge Suddock did express some initial confusion about the meaning of the jury's question. But the parties were in general agreement about the issue the jury was asking about. Neither party expressed confusion about the meaning of the question or asked the court to clarify the question. We conclude that any error was not so plain that it would be obvious to any competent judge or attorney.

 Lastly, Lawson argues that by "reinstructing the jury count-by-count in response to questions that did not call for such a response, the court's procedure jeopardized the impartiality and independence of the jury and encouraged jurors to potentially reconsider decisions already made." The gist of Lawson's claim appears to be that the court's instructions encouraged the jury to revisit counts it had already decided.

Lawson preserved this claim by raising a general objection to the court's procedure in instructing the jury count-by-count. But Lawson has not established that the instructions misstated the law or were otherwise erroneous. So we cannot say that Lawson was prejudiced if the jury reconsidered issues based on these instructions. We conclude that Lawson has failed to show that he was prejudiced by the court's procedure in instructing the jury.

### Conclusion

We decline to resolve Lawson's challenges to his felony murder conviction because we conclude that any error was harmless beyond a reasonable doubt. We conclude that Lawson has not shown that the court's mid-deliberation instructions to the jury were

erroneous or that he was prejudiced. Accordingly, we AFFIRM the superior court's judgment.

---

**30.** *See State v. Savage,* 172 N.J. 374, 799 A.2d 477, 490 (2002).